**In re James R. McATEE, Debtor.**

**James R. McATEE, Plaintiff,**

v.

**The FLORIDA BAR and Louis Lepp, Defendants.**

**Bankruptcy No. 92005255. Adv. No. 93–8009.**

United States Bankruptcy Court, N.D. Florida.

March 4, 1993.

---

Barry W. McCleary, Pensacola, FL, for debtor/plaintiff.

Philip A. Bates, Pensacola, FL, for defendants.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

At Pensacola, in said District, this 10th day of February, 1993 before Arthur B. Briskman, Bankruptcy Judge.[1]

This matter came before the Court on the application of the plaintiff for temporary, preliminary and permanent injunction. After hearing arguments of counsel and receiving exhibits, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

James R. McAtee ("the debtor"), filed his bankruptcy petition on November 16, 1992 and thereafter filed this application for temporary preliminary and permanent injunctive relief against the Florida Bar and Louis Lepp, counsel for the Florida Bar ("the defendants"). The debtor is an attorney suspended by the Florida Supreme Court from the practice of law for ninety-one (91) days as a result of disciplinary proceedings initiated by the defendants.[2] The supreme court ordered the debtor to, among other things, pay the cost of the disciplinary proceedings in the amount of $5,618.59 and repay an excessive fee to a former client in the amount of

---

1. The Honorable Arthur B. Briskman, United States Bankruptcy Judge for the Southern District of Alabama, is sitting by designation pursuant to an order of the United States Court of Appeals for the Eleventh Circuit.

2. On July 9, 1992, the Florida Supreme Court suspended the debtor from the active practice of law after a referee found the debtor guilty of the following violations: Rule 4–1.15(a) (Keeping Client Funds Separate); Rule 4–1.15(c) (Withdrawing of Lawyer's Fee Within a Reasonable Time); Rule 4–5.3 (Supervising Conduct of Non–Lawyer Employees); Rule 5–1.1(d) (Interest on Trust Accounts); Rule 5–1.1(f) (Disbursing Client Funds); Rule 5–1.2(c) (Minimum Trust Accounting Procedures); Rule 4–1.4(b) (Keeping the Client Reasonably Informed); Rule 4–1.5(a) (Collecting an Excessive Fee); Rule 4–1.5(f)(1) (Notifying Client of the Outcome of the Matter); Rule 4–1.5(f)(2) (Contingency Fee Agreements); Rule 4–1.5(f)(5) (Itemizing all Costs and Expenses); Rule 4–1.7(a) (Representing Clients With Adverse Interests); Rule 4–1.7(b) (Responsibilities to Other Clients); Rule 4–1.7(c) (Informing Multiple Clients of Implications of Common Representation); Rule 4–1.8(f) (Compensation From Third Parties); and Rule 4–8.4(c) (Engaging in Fraudulent, Dishonest, or Deceitful Conduct), and Disciplinary Rule 2–106(E) (Contingency Fee Agreements) of the former Code of Professional Responsibility of the Florida Bar.

$9,135.76, plus the judgment rate of interest before being reinstated. The ninety-one (91) days has elapsed, however, the debtor has not been readmitted to the practice of law because he has failed to fully comply with the supreme court's order.

The debtor filed a petition for reinstatement with the Florida Supreme Court on November 12, 1992. On December 11, 1992, the supreme court appointed a referee. On January 11, 1993, the defendants moved to withdraw the supreme court's reference to the referee. On February 4, 1993, the debtor moved to dismiss the defendants' January 11, 1993 motion. The debtor initiated this adversary proceeding on February 5, 1993, to enjoin the defendants from enforcing the supreme court's order of suspension and from implementing Rules 3–7.10(e), (k), the Rules Regulating the Florida Bar.

▪ The Florida Supreme Court, pursuant to Fla. Const. art. V, § 15, has exclusive jurisdiction to discipline persons admitted to practice law in Florida. Rule 3–1.2, Rules Regulating the Florida Bar, provides:

> The Supreme Court of Florida has the inherent power and duty to prescribe standards of conduct for lawyers, to determine what constitutes grounds for discipline of lawyers, *to discipline for cause attorneys admitted to practice law in Florida, and to revoke the license of every lawyer whose unfitness to practice law has been duly established.*

(emphasis added). Furthermore, Rule 3–3.1, Rules Regulating the Florida Bar provides in pertinent part:

> ... The following entities are hereby designated as agencies of the Supreme Court of Florida for [the purpose of disciplining of persons admitted to the practice of law] and with the following responsibilities, jurisdiction and powers. The board of governors, grievance committees, and referees shall have such jurisdiction and powers necessary to conduct the proper and

speedy disposition of any investigation or cause, including the power to compel the attendance of witnesses, to take or cause to be taken the deposition of witnesses and to order the production of books, records, or other documentary evidence. Each member of such agencies has power to administer oaths and affirmations to witnesses in any matter within the jurisdiction of the agency.

Rule 3–3.2, Rules Regulating the Florida Bar, provides "[t]he board is assigned the responsibility of maintaining high ethical standards among the members of the Florida Bar. The board shall supervise and conduct disciplinary proceedings in accordance with the provisions of these rules."

The Supreme Court of Florida had the power to impose the suspension and enumerate conditions of reinstatement. The defendants, as an agency of the supreme court, comprise a governmental unit with the authority to prosecute the debtor for violating the Rules Regulating the Florida Bar. The defendants' attempted enforcement of the Florida Supreme Court's July 9, 1992 order suspending the debtor from the practice of law and the attempted enforcement of Rules 3–7.10(e), (k), the Rules Regulating the Florida Bar, is primarily related to the promotion of the public safety and the effectuation of public policy.

### CONCLUSIONS OF LAW

On July 9, 1992 the debtor was suspended from the practice of law for a period of ninety-one (91) days [3] and placed on probation for three years. The debtor was required to take the ethics portion of the Florida bar examination, repay $9,135.76 as restitution for an excessive fee and pay $5,618.59 for the costs of his disciplinary proceedings as conditions of reinstatement. The ninety-one (91) days has elapsed and the debtor has petitioned for reinstatement. The debtor now seeks to enjoin the defendants from

---

**3.** Under Rule 3–5.1(e) a ninety-one (91) day suspension differs significantly from a suspension of ninety (90) days or less. Rule 3–5.1(e) provides in pertinent part:

... A suspension of ninety (90) days or less shall not require proof of rehabilitation or passage of the Florida bar examination. A suspension of more than ninety (90) days shall require proof of rehabilitation and may require passage of all or part of the Florida bar examination ...

enforcing the supreme court's order of suspension and from implementing Rules 3–7.10(e), (k), the Rules Regulating the Florida Bar. In pertinent part Rule 3–7.10, Rules Regulating the Florida Bar, provides:

(e) The chief justice shall refer the petition for reinstatement to a referee for hearing; provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in a disciplinary proceedings have been paid and restitution has been made.

. . . . .

(k) If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment shall reinstate the petitioner in the Florida Bar; provided, however, that the judgment may make such reinstatement conditioned upon the payment of all or part of the costs of the proceeding and upon making of the partial or complete restitution of parties harmed by the petitioner's misconduct that led to the petitioner's suspension of membership in the Florida Bar . . .

■ The debtor's initiation of the reinstatement process empowered the defendants to exercise their police powers. The defendants are given the responsibility of ensuring that the debtor has complied with the supreme court's order and the Rules Regulating the Bar, as well as ensuring that the debtor is fit to practice law. The dispositive question is whether the defendants are exercising a police power in requiring compliance with the supreme court's order and the Rules Regulating the Florida Bar as a condition of reinstatement.

■ The automatic stay imposed by 11 U.S.C. § 362(a) is one of the fundamental protections accorded to debtors by Congress. It is not, however, without its limitations. In *In re Synergy Development Corp.*, 140 B.R. 958 (Bkrtcy.S.D.N.Y.1992) the court aptly noted the automatic stay serves as a shield, not a sword. Section 362(b) enumerates those acts excepted from the operation of the automatic stay. In pertinent part, 11 U.S.C. § 362(b) provides:

The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

11 U.S.C. §§ 362(b)(4). Section 362(b)(4) is intended to be given a narrow construction. Its intendment is "to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 124 Cong.Rec. S17406 (daily ed. Oct. 6, 1978) (statement of Senator DeConcini), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6505, 6513.

■ The debtor has sought reinstatement to the practice of law. Consequently, he has invoked the police power of the defendants to assess whether he is fit to resume the practice of law. The defendants are not seeking to collect a monetary judgment from the estate at the expense of other creditors. Instead, they are requiring the debtor to comply with the supreme court's order and requiring the debtor to comply with the reinstatement scheme as set forth in the Rules Regulating the Florida Bar. In *Brock v. Rusco Industries, Inc.*, 842 F.2d 270, 273 (11th Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 221, 102 L.Ed.2d 212 (1988) the Eleventh Circuit Court of Appeals observed "[Section 362(b) ] . . . recognizes that the government must be able 'to enforce its laws uniformly without regard to the debtor's position in bankruptcy.' " *Brock*, at 273 (quoting *Donovan v. TMC Industries, Ltd.*, 20 B.R. 997, 1001 (N.D.Ga.1982)). Since the debtor has petitioned the Supreme Court of Florida for reinstatement he has subjected himself to the exercise of the defendants' police power and cannot utilize the automatic stay as a sword against the defendants to dictate the terms of his reinstatement to the practice of law.

■ In *In re Commerce Oil Co.*, 847 F.2d 291 (6th Cir.1988) the court established a two

578

part inquiry to determine whether a given act is encompassed within a government agency's police power:

... there are two tests for determining whether an action by a governmental unit falls within the automatic stay or is excepted under the 'police power' exception: the pecuniary purpose test and the public policy test. Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. *Those proceedings which relate primarily to matters of public safety are excepted from the automatic stay.* Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. *Those proceedings that effectuate public policy are excepted from the stay.* (citation omitted). Under either test, the state's actions should have been stayed under 11 U.S.C. § 362 if the state was seeking a monetary sum *merely* as collection of a debt or as compensation for reclamation it had already performed.

*In re Commerce Oil Co.,* 847 F.2d 291, 295 (6th Cir.1988) (emphasis added). Application of *Commerce Oil,* requires a determination of whether the reinstatement process and the conditions thereto are "primarily related to" public safety and the effectuation of public policy.

■ The primary purpose of the disciplinary and reinstatement process is to foster public safety. The debtor's requirement to make monetary payments as a condition of reinstatement does not diminish the proceedings' primary purpose. The defendants are responsible for policing the practice of law in Florida. It is to the defendants that the general public looks for assurances that those engaged in the practice of law are both competent and ethical. Ensuring compliance with one's professional standards instills in the general public, who quite frequently are incapable of distinguishing for themselves who is and who is not fit to practice law, a sense of security that those licensed to prac-

tice law have met and conform to a specified standard.

The defendants acted with concern for the public safety and in the interest of public policy by redressing the debtor's failure to conform to specified standards of conduct. The defendants now are attempting to ensure the debtor has demonstrated a degree of rehabilitation for his past wrongs and, thus, fitness to resume the practice of law. By virtue of the ninety-one (91) day suspension, the defendants are entitled to require proof of rehabilitation. This determination is made primarily in the interest of public safety and not primarily for the defendants' pecuniary interest.

The defendants prosecuted the debtor for violations of the Rules Regulating the Florida Bar. The Supreme Court of Florida determined the debtor failed to comply with these rules and punished him accordingly. The Court is not at liberty to invade the supreme court's province and restrict that court's ability to fashion remedies that protect the public and punish and deter wrongdoing by its licensees. All that is required by *In re Commerce Oil, supra,* is that the action of the governmental unit be primarily related to public safety or to effectuate public policy.

In administering the debtor's petition for reinstatement, the defendants' primary purpose is to determine whether the debtor is fit to resume the practice of law. The debtor has yet to comply with the supreme court's order insofar as it relates to the conditions of reinstatement and has failed to comply with Rule 3–7.10(e), the Rules Regulating the Florida Bar. While an incident of the defendants' insistence on compliance with the supreme court's order and the Rules Regulating the Florida Bar is the payment of restitution and costs, the primary purpose of the reinstatement proceedings is the protection of the public. Accordingly, the debtor's application for temporary preliminary and permanent injunctive relief is due to be denied.