25 A.3d 1075

IN THE MATTER OF GERALD M. SALUTI,
AN ATTORNEY AT LAW.

Argued March 29, 2011—Decided August 25, 2011.

*William B. Ziff,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Anthony Sodono, III,* argued the cause for respondent (*Trenk, DiPasquale, Webster, Della Fera & Sodono,* attorneys; *Mr. Sodono* and *Joao F. Magalhaes,* on the briefs).

*Ruby D. Cochran,* Deputy Counsel, submitted a brief on behalf of amicus curiae New Jersey Lawyers' Fund for Client Protection.

PER CURIAM.

Following separate hearings on July 22, 2010, the District V–A Fee Arbitration Committee (Committee) issued awards to three former clients of respondent Gerald M. Saluti, Esq. Saluti was ordered to pay the awards by three dates in November 2010. He did not do so. On January 3, 2011, the Office of Attorney Ethics (OAE) moved for Saluti's temporary suspension and the imposition of fines for each infraction because his obligations pursuant to the three awards were still outstanding. On January 25, 2011, after reviewing the OAE's motions, the Disciplinary Review Board (DRB) recommended to the Court that Saluti be "immediately temporarily suspended" and that he be fined $500 for each of the three outstanding awards. On January 27, 2011, the Court temporarily suspended Saluti, effective February 28, 2011, until he complied with the Committee's awards.

On February 22, 2011, Saluti and his wife filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 *U.S.C.A.* §§ 701–84. Saluti notified the DRB of the bankruptcy proceeding and transmitted a copy of the petition. Saluti asserted that the automatic stay provision of 11 *U.S.C.A.* § 362(a) was effective as of February 22, 2011, and prohibited

(i) the commencement or continuation of a judicial action or proceeding that was or could have been commenced before the bankruptcy filing, (ii) any act to recover a claim against the debtor that arose before the commencement of the case, and/or (iii) any act to obtain possession of or to exercise control over property of the estate.

On March 1, 2011, the Court entered an order requiring Saluti to show cause on March 29, 2011, why he should not be temporarily suspended from practice pursuant to *Rule* 1:20–15(k) and compelled to pay a monetary sanction. Saluti's suspension was stayed pending further action by the Court. On March 29, 2011, oral argument took place on the order to show cause and supplemental briefing was permitted.

## I.

Saluti contends that the unsecured nature of the fee arbitration debt entitles him to a stay pending the resolution of his bankruptcy. He argues that the exception to the stay provision permitting the continuation of governmental regulatory actions against debtors does not apply to discipline for failure to pay an unsecured debt that is itself the subject of the automatic stay. Further, he argues that he should not be disciplined for the failure to pay general unsecured debts that may be discharged in his bankruptcy proceeding. Ultimately, Saluti asks that this Court await the resolution of his bankruptcy proceeding, and, in the event that the fee arbitration awards are discharged, that the Court dismiss the OAE's motions as his financial obligations would be forgiven.

The OAE claims the exception to the stay provision does not apply where the proceeding is to enforce a money judgment. Accordingly, the OAE agrees with Saluti because its motion for suspension is premised on the payment of a liability.

The New Jersey Lawyers' Fund for Client Protection (LFCP), participating as amicus curiae, essentially argues that Saluti and the OAE misinterpret what has transpired. According to the LFCP, this disciplinary matter is not strictly an order to pay a debt, but an action to redress Saluti's unethical conduct and uncontested culpability, to vindicate the rights of Saluti's victims, and to protect the general public. As such, LFCP concludes that the discipline falls within the exception to the automatic stay.

## II.

When an individual petitions for bankruptcy under Chapter 7, an automatic stay is imposed on collection actions against the petitioner and his or her property. 11 *U.S.C.A.* § 362(a)(1) prescribes:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

The automatic stay "gives a [debtor] a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions," and "protects creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." *Mar. Elec. Co. v. United Jersey Bank*, 959 *F*.2d 1194, 1204 (3d Cir.1991).

Despite the protective nature of the automatic stay, not all debts and proceedings are subject to its application. One such exception is found in 11 *U.S.C.A.* § 362(b)(4):

(b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—

. . . .

(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]

Thus, certain actions brought by governmental units may proceed against a debtor where specific criteria are met, notwithstanding the fact that the debt associated with the action arose prior to the filing of a bankruptcy petition.

■ The question posed by this matter is whether the awards entered by the Committee, and the disciplinary proceeding that followed, fall within the exception to Section 362(a)(1) such that the Court may proceed in suspending Saluti during the pendency of his bankruptcy proceeding. As stated above, the instant matter will be excepted from the automatic stay provision if three conditions are met: (1) the Court's disciplinary entities qualify as "governmental units"; (2) the action enforces the Court's "police and regulatory power"; and (3) the action enforces "a judgment *other than a money judgment.*" 11 *U.S.C.A.* § 362(b)(4) (emphasis added).

Only the third standard has been placed in issue by Saluti. Indeed, he does not contest, nor could he, that the Court, the OAE, and the Committee are "governmental units." *See* 11 *U.S.C.A.* § 101(27) (defining governmental units to include a "department, agency, or instrumentality of . . . a State"). Nor does Saluti claim that the disciplinary actions were not taken in furtherance of the Court's exclusive police and regulatory power to discipline attorneys. *State v. Rue*, 175 *N.J.* 1, 14, 811 *A.*2d 425 (2002) ("Article 6 of the New Jersey Constitution places both the regulation of the courts and attorney discipline firmly under this Court's purview."). *See generally* Kevin H. Michels, *New Jersey Attorney Ethics: The Law of New Jersey Lawyering*, §§ 1:1 to 1:3–6 (2011). Rather, Saluti's challenge rests solely on his view that the Court's action effectively enforces a money judgment and, thus, does not qualify for exception under 11 *U.S.C.A.* § 362(b)(4).

### III.

Courts have developed two tests to determine whether the fundamental purpose underlying an action is "simply a collection action" as opposed to a "police or regulatory power action" that would properly be excepted from the automatic stay. 3 *Collier on Bankruptcy* ¶ 362.05[5][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2010); *see also City & Cnty. of San Francisco v. PG & E Corp.*, 433 *F.*3d 1115, 1123–24 (9th Cir.), *cert. denied*, 549 *U.S.* 882, 127 *S.Ct.* 208, 166 *L.Ed.*2d 144 (2006); *In re Commerce Oil Co.*, 847 *F.*2d 291, 295 (6th Cir.1988); *In re McAtee*, 162 *B.R.* 574, 577–78 (Bankr.N.D.Fla.1993). Those two tests are:

—the pecuniary purpose test (is the governmental unit pursuing a matter of public safety and welfare rather than a governmental pecuniary interest?); and

—the public policy test (is the government action designed to effectuate public policy rather than to adjudicate private rights?).

[3 *Collier on Bankruptcy, supra,* ¶ 362.05[5][a].]

Although the tests overlap to some extent, they are nevertheless disjunctive—if either is satisfied, the action is not considered one to enforce a "money judgment" and is excepted from the automatic stay provision. *Ibid.* ("If the answer to either question [is]

"yes," then the exception applies."). In this case, both tests are satisfied.

First, the Court does not have a governmental "pecuniary interest" in pursuing this matter because it will not gain financially from any payment made by Saluti. Instead, the Court is requiring Saluti to comply with our order. *See McAtee, supra,* 162 *B.R.* at 577 (disciplinary order exempt from automatic stay because it was "not seeking to collect a monetary judgment . . . at the expense of other creditors. Instead, [it is] requiring the debtor to comply with the supreme court's order and requiring the debtor to comply with the reinstatement scheme"). Further, where the financial benefit, if any, will be passed on to defrauded clients rather than the governmental unit itself, courts have permitted the regulatory action to be excepted from the automatic stay. *See In re D'Angelo,* 409 *B.R.* 296, 298 (Bankr.D.N.J.2009) (finding no pecuniary purpose where funds disgorged in connection with securities violation would be paid to defrauded clients, rather than governmental unit, in furtherance of public policy goals); *see also In re Arsi,* 354 *B.R.* 770, 772–74 (Bankr.D.S.C. 2006) (disciplinary order to pay restitution exempt from automatic stay).

Second, although Saluti's refusal to pay the awards to his clients is what triggered this matter, redress to the clients is not the primary purpose underlying it. Rather, it is Saluti's refusal to uphold his professional obligation to charge fees that are "reasonable," *see RPC* 1.5(a), and to comply with the disciplinary authority of the Court and its agencies, that precipitated our intervention. Indeed, Saluti's failure to fulfill the conditions that accompany the privilege of practicing law, and not his debt to any one client, is at the heart of this matter.

Those who seek the privilege of membership in the legal profession are required to submit to fee arbitration committee proceedings. *See In re LiVolsi,* 85 *N.J.* 576, 597–99, 428 A.2d 1268 (1981). Since 1978, the fee arbitration committees have been utilized to promote "public confidence in the bar and the judicial system."

*Saffer v. Willoughby*, 143 *N.J.* 256, 263, 670 *A.2d* 527 (1996). In recognition of that important governmental function, Chief Justice Wilentz observed on behalf of the Court:

> If it is true—and we believe it is—that public confidence in the judicial system is as important as the excellence of the system itself, and if it is also true—as we believe it is—that a substantial factor that erodes public confidence is fee disputes, then any equitable method of resolving those in a way that is clearly fair to the client should be adopted.... The least we owe to the public is a swift, fair and inexpensive method of resolving fee disputes.
>
> [*LiVolsi, supra,* 85 *N.J.* at 601–02, 428 *A.2d* 1268.]

Ensuring adherence to the fee arbitration committee scheme is thus an important regulatory goal because it facilitates the expedited resolution of fee disputes between attorneys and clients and fosters public confidence in the legal profession. Plainly, the gravamen of the Court's action is not to enforce a money judgment, but to bolster the fee arbitration process and to restore public confidence in the Committee's authority to resolve claim disputes.

Here, Saluti's suspension seeks to redress his blatant disregard of awards entered by the Committee in the exercise of its disciplinary authority as delegated by the Court. Although Saluti's suspension is contingent upon compliance with the Committee's awards, its "primary purpose" is to "foster public safety" by "policing the practice of law." *McAtee, supra,* 162 *B.R.* at 578. Indeed, even where an attorney is ordered to pay restitution to former clients, courts have held that the primary purpose of such discipline is to "deter improper conduct by members of the bar and vindicate the authority" of the disciplinary body. *Arsi, supra,* 354 *B.R.* at 773.

In sum, Saluti's discipline is intended to bolster the fee arbitration process and to retain public confidence in the Committee's authority to resolve claim disputes. That Saluti may have to satisfy the awards in favor of the clients to forestall suspension is wholly collateral because the "requirement to make monetary payments as a condition of reinstatement does not diminish the proceedings' primary purpose." *McAtee, supra,* 162 *B.R.* at 578.

## IV.

Because this matter falls within the exception to the automatic stay provision, the stay entered by this Court on March 1, 2011, is hereby vacated and Saluti is suspended from the practice of law in accordance with the terms of the accompanying order, until he is fully in compliance with all of the terms of the January 27, 2011, order and with all applicable provisions of *Rule* 1:20–20.

*For Suspension*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, and HOENS—6.

*Opposed*—None.