**William E. BROCK, Secretary of Labor, United States Department of Labor, Plaintiff–Appellant,**

v.

**RUSCO INDUSTRIES, INC., Defendant–Appellee.**

No. 87–8389.

United States Court of Appeals, Eleventh Circuit.

April 11, 1988.

William H. Berger, Office of the Sol., U.S. Dept. of Labor, Atlanta, Ga., Linda Jan S. Pack, Office of Sol., Dept. of Labor,

William J. Stone, Washington, D.C., for plaintiff-appellant.

A. Stephenson Wallace, Bush, Wallace & Craig, P.C., Augusta, Ga., for defendant-appellee.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS *, Senior District Judge.

FAY, Circuit Judge:

Prior to filing for bankruptcy, Rusco Industries, Inc. ("Rusco") violated the Fair Labor Standards Act ("FLSA") §§ 1–19, 29 U.S.C. §§ 201–219 (1982), by not paying its employees for their final two weeks of work. Consequently, the Secretary of Labor brought an action in district court to prevent the sale of all the goods produced in violation of the FLSA. The district court found that the Bankruptcy Code automatically stayed the Secretary's FLSA action and dismissed the case. The Secretary appeals the dismissal, and we reverse.

## I. *Background*

Rusco employed about 150 people in the manufacture of windows and doors. Because of financial difficulty, Rusco did not pay its employees from January 20, 1986 to February 3, 1986. On February 3, Rusco filed for reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101–1174 (1982).

On February 21, 1986, the Secretary filed an injunctive action under section 17 of the FLSA.[1] The Secretary alleged that Rusco would violate section 15(a)(1) of the FLSA (the "hot · goods" provision) by selling goods produced by employees paid below the minimum wage.[2] On March 24, 1986,

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Section 17 gives the federal district courts the power to enjoin violations of section 15 of the FLSA. 29 U.S.C. § 217 (1982).

2. Section 15(a)(1) provides:
    (a) ... it shall be unlawful for any person—

    > (1) to transport, offer for transportation, ship, deliver, or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of [section 06 or section 07 of the FLSA]....

    29 U.S.C. § 215(a)(1) (1982).

the district court enjoined the sale of Rusco's inventory unless Rusco deposited the proceeds of the sale into the district court's registry. Believing that bankruptcy law controlled the action, the district court transferred the case to the bankruptcy court and directed that the proceeds received from the sale of inventory be disbursed according to the future order of the bankruptcy court.

In the bankruptcy court, the Secretary of Labor moved that he receive a portion of the proceeds from the inventory in order to remove the "taint" from the "hot goods." [3] The bankruptcy court viewed the motion as equivalent to granting a "superlien" to the employees and ordered that the proceeds be distributed in accordance with the priorities set forth in the Bankruptcy Code. The district court then adopted the opinion of the bankruptcy judge, dissolved its previous injunction, and dismissed the action in its entirety.[4]

## II. *Analysis*

### A. The Fair Labor Standards Act [5]

■ The FLSA mandates the payment of a minimum wage to covered employees. Section 6(a) provides that every employer, as defined in the Act, shall pay his employees at least the specified minimum wage.[6] A manufacturer is not excused from the requirement of section 6(a) simply because it is approaching insolvency. *See Citicorp Industrial Credit, Inc. v. Brock*, — U.S. ——, 107 S.Ct. 2694, 2698 n. 4, 97 L.Ed.2d 23 (1987). Since Rusco does not dispute its failure to pay its employees for their final two weeks of work, we conclude that the

goods produced during these final two weeks were manufactured in violation of section 6 of the FLSA and are "hot goods" for the purposes of section 15(a)(1).

The Supreme Court has indicated that Congress's concern with the "hot goods" provision was two-fold. First, Congress sought to improve labor conditions. Second, Congress wanted "to eliminate the competitive advantage enjoyed by goods produced under substandard conditions." *Citicorp*, 107 S.Ct. at 2700. Most importantly, the Supreme Court concluded that preventing the shipment "of goods produced under substandard conditions is not simply a means to enforce other statutory goals; *it is itself a central purpose of the FLSA." Id.* at n. 8 (emphasis added).

The issue before us is whether Rusco's proceeding in the bankruptcy court automatically stays an injunctive suit by the Secretary of Labor under section 17 of the FLSA. Under the FLSA, Congress clearly forbade the sale of goods manufactured in violation of the minimum wage provision. To remove the "taint" and lift the injunction, however, Rusco must pay the Secretary the minimum wages of the employees. Since the Secretary has stated that he will give the money to the employees, the practical effect of removing the "taint" will be to grant the employees' minimum wage claims a higher priority than the claims of other creditors. We recognize that this creates a tension between the FLSA and the Bankruptcy Code and that we must determine what Congress intended in light of this tension.

---

**3.** The money required to remove the "taint" equals the minimum wage that Rusco did not pay its employees. To the extent that Rusco's debt to its employees exceeds the minimum wage, both parties agree that the employees will receive the rest of their wages in accordance with the priority scheme of the Bankruptcy Code. *See* 11 U.S.C. § 507(a) (1982).

**4.** The district court has stayed its final order and directed that the trustee place the proceeds from the sale of the inventory in an interest-bearing account until we resolve this appeal.

**5.** Our description of the FLSA patterns the description given by the Supreme Court in *Citicorp*

*Industrial Credit, Inc. v. Brock*, — U.S. ——, 107 S.Ct. 2694, 97 L.Ed.2d 23 (1987).

**6.** Section 6(a) provides:
    (a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
    (1) ... not less than $3.35 an hour after December 31, 1980, except as otherwise provided in this section....
29 U.S.C. § 206(a) (1982).

## B.  Automatic Stay

Rusco's argument is that section 362 of the Bankruptcy Code stays the Secretary's action.[7]  Subsection (a) of section 362 effectively stays all suits besides the bankruptcy petition; subsection (b) operates as a limited exception to subsection (a).  The district court believed that the automatic stay provision required it to dismiss the Secretary's injunctive action.

The district court erred in dismissing the case.  The purpose behind the automatic stay provision is "to facilitate the orderly administration of the debtor's estate." *Donovan v. TMC Industries, Ltd.*, 20 B.R. 997, 1001 (N.D.Ga.1982).  The automatic stay stops collection efforts and helps relieve the debtor of financial pressures. S.Rep. No. 989, 95th Cong., 2d Sess. 54–55, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840–41.  The exception to the automatic stay, however, recognizes that the government must be able "to enforce its laws uniformly without regard to the debtor's position in the bankruptcy court." *Donovan*, 20 B.R. at 1001.  Consequently, Congress permitted a suit by the government "to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws" to proceed.  S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5838. We believe that the Secretary brought this suit under his police power.  The Secretary brought the suit to protect legitimate businesses from unfair competition and to enforce the federal law regarding minimum wage.  Since the Secretary is suing under the government's police power, his suit is exempted from the automatic stay provision.[8]

Not only does the exception permit the Secretary's action to proceed, but it also permits the Secretary to enforce the action. This is an injunction under section 17 to prevent the sale of "hot goods" in interstate commerce;  it is not an action for damages.   Congress has declared that where a governmental unit is suing under its police power, section 362(b)(5) provides an exception to an automatic stay which "extends to permit an injunction and *enforcement of an injunction.*"[9]  Therefore, section 362 does not bar either the continuation or enforcement of an injunctive action under section 17 of the FLSA.

---

**7.**  Section 362 provides:

(a) Except as provided in subsection (b) of this section, [the filing of a bankruptcy petition] operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

. . . .

(b) The [filing of a bankruptcy petition] does not operate as a stay—

. . . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

. . . .

11 U.S.C. § 362 (1982).

**8.**  Other cases in which a governmental unit has sued under its police powers and avoided the Bankruptcy Code's automatic stay provision are: *NLRB v. Evans Plumbing Co.*, 639 F.2d 291 (5th Cir. Unit B 1981) (per curiam) (NLRB sued debtor for unfair labor practices);  *EEOC v. Rath Packing Co.*, 787 F.2d 318 (8th Cir.) (EEOC brought suit under Title VII for discriminatory hiring), *cert. denied,* —— U.S. ——, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986);  *Penn Terra Ltd. v. Department of Envtl. Resources*, 733 F.2d 267 (3d Cir.1984) (state government sued to enforce its environmental statute);  and *Commodity Futures Trading Comm'n v. Co Petro Mktg. Group*, 700 F.2d 1279 (9th Cir.1983) (CFTC sued to stop violations of the Commodities Exchange Act).

**9.**  S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5838 (emphasis added).  Subsection (b)(5) also allows a governmental unit to obtain the entry of a money judgment, but not the enforcement of the money judgment. *Id.*

## C. Condition Precedent

 We believe that Congress established the payment of a minimum wage as a condition precedent to the shipment of manufactured goods. As the Supreme Court pointed out in *Citicorp*, Congress has banned many products from interstate commerce that are not produced in conformance with specified standards. 107 S.Ct. at 2701. Some of these banned goods include: misbranded hazardous substances, 15 U.S.C. § 1263(a) (1982), misbranded food, drug, and cosmetics, 21 U.S.C. §§ 331(a)–(c) (1982), and uninspected poultry products, 21 U.S.C. §§ 458(a)(2) (1982). It is indisputable that a company's bankrupt status would not override Congress's insistence on the inspection of poultry or the proper branding of hazardous substances. Because of its concern about public safety, Congress established the inspection and branding of these products as conditions precedent to their sale. Thus, the bankrupt can choose between paying for the inspection and branding or keeping the products in storage.

Similarly, Congress established a condition precedent to the sale of manufactured products. Congress was concerned that the unrestricted sale of goods produced under substandard labor conditions would further erode working conditions throughout the country.

> Congress had found that substandard wages and excessive hours, when imposed on employees of a company shipping goods into other States, gave the exporting company an advantage over companies in the importing States. Having so found, Congress decided as a matter of policy that such an advantage in interstate competition was an "unfair" one, and one that had the additional undesirable effect of driving down labor conditions in the importing States.

*Maryland v. Wirtz*, 392 U.S. 183, 189, 88 S.Ct. 2017, 2020, 20 L.Ed.2d 1020 (1968). Consequently, Congress required manufacturers to comply with the minimum wage provision of the FLSA or to keep their products out of interstate commerce. Therefore, we believe Congress intended to keep "hot goods" out of interstate commerce in spite of the Bankruptcy Code, exactly as it would uninspected poultry or misbranded drugs.

## III. *Conclusion*

We believe that the Secretary of Labor's action is exempted from the Bankruptcy Code's automatic stay provision and that Congress intended to prevent the sale of "hot goods" in interstate commerce even when the manufacturer has filed for bankruptcy. Therefore, we reverse the district court's dismissal of the case, we vacate the order transferring the funds to the bankruptcy court, and remand for the payment of so much of the funds as necessary to remove the "taint."

REVERSED, VACATED and REMANDED.