**In re USM TECHNOLOGY CORPORATION,**
**Debtor.**

**USM WORKERS' COMMITTEE,**
**Plaintiff,**

v.

**Suzanne DECKER, Chapter 7 Trustee for the Estate of USM Technology Corporation; Silicon Valley Bank, Defendants.**

**Bankruptcy No. 92–56411–JRG.**
**Adv. No. 92–5672.**

United States Bankruptcy Court,
N.D. California.

Sept. 16, 1993.

James K. Cameron, Thomas M. Kim, Le-Boeuf, Lamb, Leiby & MacRae, San Francisco, CA, for 96 former employees of USM Technology Corp. aka the "USM Workers' Committee."

Timothy H. Hopkins, Hopkins & Carley, San Jose, CA, for defendant Silicon Valley Bank.

John A. Butler, III, Mountain View, CA, for trustee.

## OPINION

JAMES R. GRUBE, Bankruptcy Judge.

### I. INTRODUCTION.

Debtor's former employees seek a declaration that their right to receive unpaid wages from proceeds of "goods" produced in violation of the Fair Labor Standards Act[1] (the "FLSA") (colloquially known as "hot goods")[2] is superior to the rights of a creditor holding a perfected security interest in Debtor's accounts receivable. The

---

1. Fair Labor Standards Act §§ 1–19, 29 U.S.C. §§ 201–219 (West 1985 & Supp.1993).

2. "Hot goods" are goods produced in violation of the minimum wage and overtime pay re-

quirements of the Fair Labor Standards Act §§ 6, 7, 15(a)(1), 29 U.S.C.A. §§ 206, 207, 215(a)(1).

court finds that the doctrine is not applicable to *proceeds* of goods produced in violation of the FLSA.

## II. *FACTUAL BACKGROUND.*

Prior to filing its bankruptcy petition, USM Technology Corporation ("USM") was in the business of assembling electronic circuit boards utilized in the manufacture of personal computers. Silicon Valley Bank (the "Bank") provided financing to USM. The Bank perfected a security interest in all of USM's assets to secure all loans it made to USM. In early 1992, USM breached its loan agreements with the Bank. On August 27, 1992, the Bank obtained an order appointing a receiver for USM. On September 9, 1992, USM's landlord evicted the receiver and business operations ceased.

Two days later, on September 11, 1992 (the "Petition Date"), USM filed a petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Shortly thereafter, on October 18, 1992, the case was converted to one under Chapter 7 of the Bankruptcy Code. Suzanne Decker (the "Trustee") was appointed the Chapter 7 trustee for the estate of USM.

The primary assets of the estate consisted of uncollected accounts receivable. The receiver, who was in possession prior to the Petition Date, and the Trustee were able to collect approximately $400,000 on the accounts receivable. As of the Petition Date, USM owed the Bank approximately $1.2 million and, as previously noted, the Bank was secured by all assets of USM. The Trustee gave notice of her intent to abandon the accounts receivable proceeds to the Bank based upon its secured status.

In addition to the Bank's claim, USM owed a substantial sum to its former employees for unpaid wages earned from July 17 through September 9, 1992. Ninety-five of the former employees organized themselves into a committee (the "Committee"), which asserted an interest in approximately $230,000 of the accounts receivable proceeds because that amount of the accounts receivable was generated from the sale of circuit boards produced by members of the Committee. The Committee initiated this adversary proceeding to prevent the abandonment by the Trustee. The Committee's complaint contains a claim for declaratory relief seeking a determination that its claim to the Fund for unpaid wages, based on the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219 (West 1985 & Supp.1993), has priority over the Bank's secured interest in the Fund. The Bank, the Trustee, and the Committee entered into a stipulation that allowed the Trustee to abandon all proceeds of the accounts receivable proceeds except $228,338.50, which the Trustee agreed to hold in an interest bearing account (the "Fund") pending the outcome of this lawsuit. The Bank and the Committee thereafter filed the cross-motions for summary judgment which are now before the court.

## III. *ISSUES.*

The Committee asserts that existing law supports its argument that the FLSA covers the proceeds of "hot goods," as well as the goods themselves, and that employees have standing under the FLSA to initiate an action to pursue "hot goods" or their proceeds. If the court does not agree, the Committee then argues that the court should extend existing law and interpret the FLSA to cover proceeds as well as goods and should also find an implied private right of action in the Act allowing employees to pursue "hot goods" and their proceeds in order to carry out the policies underlying the Act.

## IV. *DISCUSSION.*

### A. *The Committee Does Not Have Standing to Pursue an Action Against the Bank for Unpaid Wages According to the Plain Meaning of the FLSA.*

■ Section 6 of the FLSA provides that "[e]very employer shall pay to each of his employees ... wages at the following rate[ ]: ... not less than $4.25 an hour...." § 6(a), 29 U.S.C.A. § 206(a). Section 7 of the FLSA provides that "no employer shall employ any of his employ-

ees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." § 7, 29 U.S.C.A. § 207(a)(1).

It is unlawful under the FLSA "for any person—(1) to transport ... in commerce, ... any goods in the production of which any employee was employed in violation of section 206 or section 207 of this title ...; [or] (2) to violate any of the provisions of section 206 or section 207 of this title...." § 15, 29 U.S.C.A. § 215(a)(1), (2). Section 15(a)(2) makes it unlawful to fail to comply with the minimum wage and overtime pay requirements of the FLSA. Such goods are known as "hot goods." Section 15(a)(1) makes it unlawful for certain persons to transfer "hot goods" into interstate commerce.

The enforcement scheme of the FLSA is found in sections 16 and 17. §§ 16, 17, 29 U.S.C.A. §§ 216, 217. Under section 16(b) individual employees are authorized to bring a private cause action against their employer if their employer violates the above provisions:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover the liability prescribed [above] ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

§ 16(b), 29 U.S.C.A. § 216(b).

By its terms, section 16(b) applies only to employers. " 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee...." § 3, 29 U.S.C.A. § 203(d). The Committee does not assert that the Bank is an "employer." Accordingly, an action under § 16(b) is not maintainable against the Bank.[3]

Second, section 17 provides: "The district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title...." § 17, 29 U.S.C.A. § 217. Only the United States Secretary of Labor has standing to bring an action under section 17. § 11(a), 29 U.S.C.A. § 211(a). The Committee cites no authority for the proposition that employees have standing under section 17.

The only remedy specifically provided for employees under the FLSA is an action against their employer to recover back wages pursuant to section 16(b). *Marchak v. Observer Publications, Inc.*, 493 F.Supp. 278, 280 (D.R.I.1980). "[T]his interpretation of the statutory enforcement scheme has resulted from the determination that injunctive relief is generally equitable in nature, and under the FLSA, intended to ensure compliance with the wage and hour standards created by the Act. It is not ... a damages action...." *In re Southwest Equip. Rental, Inc.*, 102 B.R. 132, 135–36 (E.D.Tenn.1989). *See also, Barrentine v. Arkansas–Best Freight Sys., Inc.*, 750 F.2d 47 (8th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985); *Morelock v. NCR Corp.*, 546 F.2d 682, 688 (6th Cir.1976), *vacated on other grounds*, 435 U.S. 911, 98 S.Ct. 1463, 55 L.Ed.2d 503 (1978); *Wirtz v. Jones*, 340 F.2d 901, 903–05 (5th Cir.1965); *Avitia v. Metropolitan Club of Chicago, Inc.*, 731 F.Supp. 872 (N.D.Ill.1990); *EEOC v. American Telephone & Telegraph Co.*, 365 F.Supp. 1105 (E.D.Pa.1973), *aff'd*, 506 F.2d 735 (3d Cir. 1974).

Even if the Committee had standing, the Committee does not seek to enjoin USM

---

**3.** To the extent that the Trustee is defined as an employer, that would give the Committee a claim against the bankruptcy estate. Since the Bank is secured by all assets of the estate and is owed more than the value of the estate's assets, this claim is worthless.

from transferring "hot goods" into interstate commerce or from continuing to violate the minimum wage and overtime pay requirements of the FLSA. *See* §§ 6, 7, 15, 17, 29 U.S.C.A. §§ 206, 207, 215(a)(1), (2), 217. All the goods produced in part through the labor of members of the Committee have already been transferred into interstate commerce, all that remains are accounts receivable proceeds. Moreover, USM no longer has any employees. Simply put, there is no pending or threatened violation of section 15 which the court could enjoin under section 17. §§ 15, 17, 29 U.S.C.A. §§ 215, 217.[4]

## B. *Employees Do Not Acquire an Interest in the Proceeds of "Hot Goods."*

 The Committee does not assert that the accounts receivable proceeds are "goods" under the FLSA,[5] but instead assert that current case law supports the argument that the proceeds of "hot goods" are also tainted and that unpaid workers have an interest in the allegedly tainted proceeds. Alternatively, the Committee argues that the reasoning underlying recent decisions interpreting the FLSA support a finding that the court should extend the concept of "hot goods" to cover the proceeds of such goods. The court rejects both arguments.[6]

---

4. The FLSA also provides:
 Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.
 § 16, 29 U.S.C. § 216(a). The Committee does not assert any rights under this subsection.

5. "Goods" is a defined term under the FLSA:
 "Goods" means [not surprisingly] goods ... wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part of ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.
 § 3, 29 U.S.C.A. § 203(i). The term goods connotes something made, worked on, or handled. *Mitchell v. Hygrade Water & Soda Co.*, 285 F.2d

## 1. *Existing law does not support the Committee's argument.*

Only one published decision supports the Committee's assertion that unpaid workers have rights in the proceeds of "hot goods." *In re Russell Transfer, Inc.*, 107 B.R. 535 (Bankr.W.D.Va.1989). This court is not bound by *Russell Transfer* and does not agree with its reasoning.

In *Russell Transfer*, the court held "that ... accounts receivable generated from the non-payment of wages ... [do not become] property of the estate ... until such wages are paid...." *Russell Transfer*, 107 B.R. at 536. The court based this conclusion on the following analysis:

The employees' efforts were used to generate funds and such funds would not have come into being and would not have been available but for such employees' work and efforts. *See, Citicorp Industrial Credit, Inc. v. Brock*, 483 U.S. 27 [107 S.Ct. 2694, 97 L.Ed.2d 23] (1987). In that case the Supreme Court held that the funds generated by the unpaid workers were not subject even to a secured creditor's interest of *Citicorp* and that the broad prohibition of FLSA in the area of "hot goods" applied even to said secured creditors which acquires the goods pursuant to security agreement and that those funds generated are outside the

---

362, 365 (8th Cir.1960) (activities of drivers' helpers in picking up empty bottles not within the purview of the FLSA). "The term 'Goods' is defined in Sec. 203(i) of the Act, but this definition does not include all goods of every kind and character. It embraces only such articles as are produced for commerce." *Selby v. J.A. Jones Constr. Co.*, 175 F.2d 143, 146 (6th Cir. 1949) (atomic bomb not a "good for commerce"). Accounts receivable are intangible assets not "produced for commerce," but result from the production of tangible items or services, they clearly do not fall within the definition of "goods" set forth in the statute.

6. Based on the court's finding that the members of the Committee acquire no interest in the proceeds from the sale of "hot goods," the court does not reach the issue of whether there is an implied private right of action, vested in unpaid workers, to bring a suit under section 17 of the FLSA.

perimeter of a secured creditor's claim. This principle in *Citicorp* was further applied in the case of *Brock v. Rusco Industries, Inc.*, 842 F.2d 270 (11th Cir. 1988). In that Chapter 11 case, the [c]ourt held that the stay did not apply to property in the nature of hot goods and the Secretary of Labor not only was not stayed by § 362 but could utilize those generated funds for payment of the unpaid wages.

*Id.* Not only is the meaning of the above language difficult to ascertain, but its analysis of *Citicorp* and *Rusco Industries* is flawed.

In *Citicorp*, the Supreme Court addressed the issue of whether the prohibition on introducing "hot goods" into interstate commerce contained in section 15(a)(1) applies to secured creditors. *Citicorp*, 483 U.S. at 29, 107 S.Ct. at 2696. The Supreme Court held that the language of section 15(a)(1) includes secured creditors within its purview. *Id.* at 39, 107 S.Ct. at 2701.[7] Contrary to the assertion in *Russell Transfer*, the Supreme Court did not hold that unpaid workers have an interest in the proceeds of "hot goods" superior to the interest of a secured creditor. *Russell Transfer*, 107 B.R. at 536. In fact, the Court held just the opposite:

A literal application of § 15(a)(1) does not grant employees a priority in "hot goods" superior to that which a secured creditor has under state law. [A secured creditor's] rights in the collateral ... are unchanged by our holding. [A secured creditor] still owns the goods, subject only to the "hot goods" provision, which prevents it from placing them in interstate commerce. *The employees have not acquired a possessory interest in the goods....* That [a secured creditor] can cure the employer's violation of the FLSA by paying the employees the statu-

torily required wages *does not give the employees a "lien" on the assets superior to that of a secured creditor.*

*Citicorp*, 483 U.S. at 38–39, 107 S.Ct. at 2701 (emphasis added) (footnotes omitted). The benefit to unpaid workers when a section 17 injunctive action is prosecuted and persons in possession of "hot goods" are prohibited from transferring the "hot goods" until the workers are paid, is only incidental. The Court also expressly declined to address the issue of whether application of the "hot goods" provision of the FLSA would interfere with the Bankruptcy Code, because the debtor had not filed for bankruptcy. *Citicorp*, 483 U.S. at 39 n. 10, 107 S.Ct. at 2701 n. 10.

*Rusco Industries*, decided after the Supreme Court rendered the *Citicorp* decision, is the only circuit court decision addressing the application of the FLSA in a bankruptcy setting. At issue in *Rusco Industries* was whether the automatic stay imposed by 11 U.S.C. § 362(a), applied to an injunctive action brought by the United States Secretary of Labor under section 17 of the FLSA. *Rusco Industries*, 842 F.2d at 272. The court found that the injunctive action was not subject to the automatic stay because the action was one to enforce the government's police powers. *Rusco Industries*, 842 F.2d at 273; *see also* 11 U.S.C. § 362(b)(4). The reasoning underlying the decision is as follows: Section 15(a)(1) of the FLSA makes it *unlawful* to introduce "hot goods" into interstate commerce; A suit under section 17 of the FLSA is designed to enjoin further unlawful action; Accordingly, a suit under section 17 of the FLSA is an action to enforce the government's police power and, thus, not subject to the automatic stay. The court did not hold that funds generated from the sale of "hot goods" must be uti-

---

7. The *Citibank* Court reasoned:

Section 15(a)(1) prohibits "any person" from introducing goods produced in violation of § 6 or § 7 of the FLSA into interstate commerce. Section 3(a) defines "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29

U.S.C. § 203(a). As a corporate entity, petitioner clearly falls within the plain language of the statute.

*Citicorp Industrial Credit, Inc. v. Brock*, 483 U.S. 27, 33, 107 S.Ct. 2694, 2698, 97 L.Ed.2d 23 (1987). The Bank does not argue that it is not a "person" within the purview of section 15(a)(1). However, since the Bank is not holding any "hot goods," it argues that *Citicorp* does not apply.

lized to make the payments required by sections 6 and 7 of the FLSA.

This court declines to follow *Russell Transfer* because it misapplies the reasoning of *Citicorp* and *Rusco Industries.* Since no authoritative published decision holds that unpaid workers have the right to be paid from the proceeds of the sale of "hot goods," the question becomes whether the court should extend existing law and find that unpaid workers have an interest in the proceeds of "hot goods."

**2.** *Citicorp does not support the contention that unpaid workers have an interest in the proceeds of the sale of "hot goods."*

■■■ As discussed *supra,* the *Citicorp* Court expressly held that unpaid workers do not acquire a possessory interest in, or a lien on, the proceeds of the sale of "hot goods." *Citicorp,* 483 U.S. at 38–39, 107 S.Ct. at 2701–02. Given the clarity of the Supreme Court's ruling, the court finds that it must reject the Committee's argument for an extension of current law. If this court were to hold that unpaid workers acquire some interest in the proceeds of the sale of "hot goods" it would be failing to follow the clear dictate of *Citicorp.* This court does not have the power to do so.[8]

## V. *CONCLUSION.*

The court concludes that the Committee's claim for unpaid wages does not have priority over the Bank's secured claim to the Fund.[9]

---

**8.** The court notes that the former employees of USM are not left without a remedy. They may sue their employer, which may include the right to sue one or all of the three former principals of USM. § 16(b), 29 U.S.C.A. § 216(b); *see also Marchak v. Observer Publications, Inc.,* 493 F.Supp. 278, 282 (D.R.I.1980).

**9.** The Committee also argues: (1) that the court has unlimited equitable power to order payment of their wages out of the accounts receivable proceeds before payment to the Bank; or (2) that a portion of the accounts receivable proceeds are held in a statutory or constructive trust. The court rejects these arguments. First, the court does not have the power to alter the priority scheme set forth in the Bankruptcy Code. *In re B & W Enter., Inc.,* 713 F.2d 534 (1983); *In re Pacific Express, Inc.,* 69 B.R. 112, 115 (Bankr. 9th Cir.1986); *see also Johnson v. First Nat'l Bank,* 719 F.2d 270, 273 (8th Cir. 1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Second, there is no statutory trust created by the FLSA. A trust is unnecessary because the FLSA grants unpaid employees a private cause of action against their employers. § 16(b), 29 U.S.C.A. § 216(b). The cases cited by the Committee are also factually distinguishable from the facts of this case. *In re Quinta Contractors, Inc.,* 34 B.R. 129 (Bankr.M.D.Pa.1983) (contract between debtor and federal government specifically provided that the government could withhold amounts due under the contract until the debtor paid his sub-contractors; court held that the government held monies due to the general contractor in trust for the subcontractors); *Georgia Pac. Corp.* *v. Sigma Serv. Corp.,* 22 B.R. 984 (M.D.La.1982) (Mississippi statute provided that, once a subcontractor serves a stop-notice on an owner of property for whose benefit construction is taking place, any funds held by the owner due to the general contract are thereafter held in trust for the benefit of the subcontractor). There is simply no provision in the FLSA containing "trust" type language. Third, the court finds that the Committee has not met its burden of convincing the court that it is entitled to a constructive trust. *Taylor v. Fields,* 178 Cal. App.3d 653, 665, 224 Cal.Rptr. 186, 194 (1986) (claimant must prove entitlement to constructive trust by clear and convincing evidence). Constructive trusts under California law are defined at California Civil Code sections 2223 and 2224. Section 2223 is inapplicable by its terms because the Committee does not "own" the proceeds of "hot goods." *See Citicorp,* 483 U.S. at 38, 107 S.Ct. at 2701 (unpaid workers do not have a possessory interest in, or lien on, proceeds from the sale of "hot goods"). Section 2224 is also inapplicable because neither the Trustee nor the Bank acquired the accounts receivable by "fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act...." Cal.Civ.Code § 2224 (West 1993). Moreover, constructive trusts are not generally allowed in a bankruptcy setting because they circumvent the priority scheme of the Bankruptcy Code by favoring certain creditors. *In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416, 1419 (9th Cir.1985); *In re North Am. Coin & Currency, Ltd.,* 774 F.2d 1390, 1391 (9th Cir. 1985), *cert. denied sub nom, Torres v. Eastlick,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1983).