Malee BUREERONG, et al., Plaintiffs,

v.

Tavee UVAWAS, et al., Defendants.

No. CV 95–5958 ABC (BQRx).

United States District Court,
C.D. California.

March 3, 1997.

---

Stewart Kwoh, Julie A. Su, Asian Pacific American Legal Center, Alan B. Pick, Brian Boydston, Pick & Boydston, Mark D. Rosenbaum, David S. Schwartz, Daniel P. Tokaji, ACLU Foundation of Southern California, Los Angeles, CA, Della Bahan, Glenn Rothner, Anthony Segal, Bahan & Greenstone, Dan Stormer, Hadsell & Stormer, Inc., Pasadena, CA, for Plaintiffs.

David A. Maddux, Sheppard, Mullin, Richter & Hampton, for Defendant Hub Distributing, Inc.

### ORDER RE: Defendant Hub Distributing, Inc.'s Motion to Dismiss

COLLINS, District Judge.

Defendant Hub Distributing, Inc.'s Motion to Dismiss certain claims in Plaintiffs' Third Amended Complaint came on regularly for hearing before this Court on March 3, 1997. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Defendant's Motion is GRANTED in part and DENIED in part.

### I. Procedural Background

On November 25, 1996, Plaintiffs filed their Third Amended Complaint ("TAC") in this action. The TAC incorporated allegations against several Defendants, including HUB DISTRIBUTING, INC. ("Hub"). The TAC alleged nineteen separate claims for relief, including: (a) manufacture of garments by industrial homework ("Fourth Claim"); (b) contracting with unregistered contractor ("Fifth Claim"); (c) false imprisonment ("Ninth Claim"); (d) invasion of privacy ("Tenth Claim"); and (e) negligent sale of tainted goods for profit ("Nineteenth Claim").

On January 13, 1997, Hub filed the instant Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Hub argues that Plaintiffs' Fourth, Fifth, Ninth, Tenth, and Nineteenth

Claims should be dismissed for failure to state a claim upon which relief can be granted. On February 14, 1997, Plaintiffs filed their Opposition to Hub's Motion to Dismiss. Hub filed its Reply on February 24, 1997.

## II. Plaintiff's Allegations

This action is one of several civil and criminal proceedings stemming from allegations that the Plaintiffs, who are immigrant garment workers from Thailand, were falsely imprisoned in a complex in El Monte, California (referred to by Plaintiffs as the "Sweatshop"), and employed in a system of involuntary servitude. Other Latino plaintiffs were not subjected to involuntary servitude, but allege violations of federal and state labor laws concerning minimum wages, maximum hours, and unfair labor practices.

The facts underlying Plaintiffs' allegations are well-known to the parties and will not be extensively restated by the Court. Rather, the Court will confine its discussion to facts and allegations that are relevant to the instant Motion to Dismiss. Accordingly, only Plaintiffs' Fourth, Fifth, Ninth, Tenth, and Nineteenth Claims and relevant general allegations are discussed below.

### A. General Allegations

Plaintiffs allege that "each defendant was completely dominated and controlled by its co-defendants, each was the alter ego of the others and all aided and abetted the wrongful acts of the others." [TAC ¶ 10].

Plaintiffs further allege that "each defendant has acted as an employer and/or joint employer within the meaning of § 3(d) of the [Fair Labor Standards Act], 29 U.S.C. § 203(d), Title 29 C.F.R. § 791.2 and California Labor Code § 2650(b)." [TAC ¶ 12].

Plaintiffs also allege that "each of the defendants was the agent, employee and/or joint venturer of, or working in concert with co-defendants and was acting within the course and scope of such agency, employment and/or joint venture or concerted activity. To the extent that said conduct and omissions were perpetrated by certain defendants, the remaining defendant or defendants confirmed or ratified said conduct and omissions." [TAC ¶ 13].

### B. Fourth and Fifth Claims (Manufacture of Garments by Industrial Homework and Contracting with Unregistered Contractor)

Plaintiffs' Fourth and Fifth Claims are substantially identical to claims in Plaintiffs' First Amended Complaint that were dismissed *with prejudice* pursuant to the Court's March 21, 1996 Order.

### C. Ninth Claim (False Imprisonment)

Plaintiffs' Ninth Claim alleges false imprisonment of the Thai plaintiffs against all Defendants. Specifically, Plaintiffs claim that Defendants violated the Thai plaintiffs' personal liberty by confining them against their will, censoring their mail, and refusing to allow them unmonitored contact with the outside world. [*See* TAC ¶ 112]. Defendants allegedly accomplished this restraint through the negligent and intentional use of physical force, express and implied threats of physical force, and by threatening harm to the Thai plaintiffs and their families if plaintiffs attempted to escape. [*See* Id.].

### D. Tenth Claim (Invasion of Privacy)

Plaintiffs' Tenth Claim alleges invasion of privacy on behalf of the Thai plaintiffs against all Defendants. Specifically, Plaintiffs allege that Defendants violated the personal privacy of the Thai plaintiffs by "putting them in such close proximity to other workers and Sweatshop Operators at all times, including all non-work hours, as to eliminate plaintiffs' personal privacy by invading plaintiffs' right of private occupancy of plaintiffs' rooms." [TAC ¶ 115]. Further, Plaintiffs allege that Defendant monitored plaintiffs' telephone calls, read plaintiffs' mail, and restricted plaintiffs' access to private bathroom facilities. [*See* Id.]. Plaintiffs allege that, in so doing, Defendants intruded on the solitude, seclusion, private affairs and concerns of the Thai plaintiffs. [*See* Id.].

### E. Nineteenth Claim for Relief (Negligent Sale of Tainted Goods For Profit)

Plaintiffs' Nineteenth Claim is alleged by all plaintiffs against all so-called manufacturer defendants (including Hub) for "negligent

sale of tainted goods for profit." As part of this claim, Plaintiffs assert that "[t]he garments produced on Manufacturers' behalf by Sweatshop and Operators with plaintiffs' labor were produced in a manner which did not comply with all common law principles and labor statutes relevant to the production of garments. The garments produced were, therefore, tainted goods." [TAC ¶ 154].

Plaintiffs allege that the Manufacturers either knew or reasonably should have known that the garments produced on Manufacturers' behalf were tainted goods. [*See* TAC ¶ 155]. Despite this actual or constructive knowledge, Plaintiffs allege that the Manufacturer defendants negligently sold the tainted goods to the public at large for profit. [*See* TAC ¶ 156]. As a direct and proximate result of the Manufacturers' allegedly negligent sale of tainted goods to the public, the Manufacturers continued to pay Sweatshop and Operators to produce tainted goods with Plaintiffs' labor. [*See* TAC ¶ 157]. Finally, as a direct and proximate result of the sale and continued production of tainted goods, Plaintiffs claim that they have suffered injuries entitling them to damages based on the negligence of the Manufacturers. [*See* TAC ¶ 158].

## III. Discussion

### A. Standard for Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir.1980) (finding that the complaint must be read in the light most favorable to the plaintiff). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir.1968), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991), *overruled on other grounds by Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., et al.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir.1986), *abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

Lastly, a Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled." Schwarzer, et al., *Civil Procedure Before Trial* § 9:230. "It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice.*, 753 F.2d 1092, 1104 (D.C.Cir.1985); *see also Doss v. South Central Bell Telephone Co.*, 834 F.2d 421, 425 (5th Cir.1987) (demand for improper remedy not fatal if claim shows plaintiff entitled to different form of relief)

## B. Analysis of Hub's Motion

### 1. Fourth and Fifth Claims (Manufacture of Garments by Industrial Homework and Contracting with Unregistered Contractor)

Plaintiffs concede that their Fourth and Fifth Claims are substantially identical to claims that were dismissed *with prejudice* by the Court in its March 21, 1996 Order. [*See* Opp. at p. 9].[1] For the same reasons noted in the March 21, 1996 Order, these claims are summarily dismissed with prejudice. *See* March 21, 1996 Order at pp. 32–45; *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1471–77 (C.D.Cal.1996). Accordingly, Hub's Motion is GRANTED with respect to the Fourth and Fifth Claims.

### 2. Ninth and Tenth Claims for Relief (False Imprisonment and Invasion of Privacy)

■ Defendant Hub argues that Plaintiffs' Ninth and Tenth Claims for false imprisonment and invasion of privacy are frivolous because Hub is a "retailer" that did not possess the necessary intent or perform the requisite acts to support liability under either theory of intentional tort. In response, Plaintiffs argue that Hub is vicariously or jointly liable for the intentional torts of the Sweatshop Operators.[2] This counterargument asserts essentially three different theories of liability: (a) under a traditional agency theory, Hub is vicariously liable for the intentional torts of their agents, the Sweatshop Operators; (b) Hub is jointly liable as an "aider and abettor" for the intentional torts of the Sweatshop Operators; (c) under a novel theory of "joint employer" liability,

Hub is jointly liable for any intentional torts committed by the Sweatshop Operators in furtherance of concerted wage-and-hour-law violations.

### a. Traditional Agency Theory of Vicarious Liability

Plaintiffs generally allege that the Sweatshop Operators were agents of the Manufacturer defendants. [*See* TAC ¶ 13]. On this theory of agency, Plaintiffs contend that the Manufacturer defendants are vicariously liable for the false imprisonment and invasion of privacy committed by the Sweatshop Operators.

■ As a general rule, liability under the doctrine of respondeat superior[3] extends to malicious acts and other intentional torts an employee committed within the scope of his employment. *See Ruppe v. City of Los Angeles,* 186 Cal. 400, 402, 199 P. 496 (1921); Rest.2d, Agency §§ 231, 244 et seq. Further, even criminal torts may fall within the scope of employment for purposes of respondeat superior liability, even though the employer has not authorized the employee to commit crimes or intentional torts. *See Lisa M. v. Henry Mayo Newhall Memorial Hospital,* 12 Cal.4th 291, 296–97, 48 Cal.Rptr.2d 510, 907 P.2d 358 (1995); *Mary M. v. City of Los Angeles,* 54 Cal.3d 202, 209, 285 Cal. Rptr. 99, 814 P.2d 1341 (1991). Finally, in some cases, respondeat superior doctrine may extend vicarious liability beyond the direct employment context to hold principals liable for intentional torts of agents committed within the scope of their agency. *See*

---

**1.** These claims were realleged by Plaintiffs because they believed that this was necessary to preserve their claims for appeal. [*See* Opp. at pp. 9–10].

**2.** Hub does not argue that Plaintiffs have failed to properly allege the predicate intentional torts of false imprisonment and invasion of privacy against the Sweatshop Operators. The Court finds that these predicate intentional torts have been adequately alleged against the Sweatshop Operators. *See Fermino v. Fedco,* 7 Cal.4th 701, 715, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994) (under California law, elements of false imprisonment include nonconsensual, intentional confinement of a person, without lawful privilege,

for an appreciable length of time); *Miller v. National Broadcasting Co.,* 187 Cal.App.3d 1463, 1481, 232 Cal.Rptr. 668 (1986) (under California law, elements of invasion of privacy include intrusion upon the solitude or seclusion of another or his private affairs or concerns when that intrusion would be highly offensive to a reasonable person).

**3.** Under the rule of respondeat superior, an employer is vicariously liable for the torts of its employees committed within the scope of their employment. *See Lisa M. v. Henry Mayo Newhall Memorial Hospital,* 12 Cal.4th 291, 296, 48 Cal.Rptr.2d 510, 907 P.2d 358 (1995).

**1236**

*Noble v. Sears, Roebuck & Co.*, 33 Cal.App.3d 654, 663, 109 Cal.Rptr. 269 (1973).

Defendant Hub does not contest the adequacy of Plaintiffs' allegations concerning agency and vicarious liability. Rather, Hub replies to Plaintiffs' agency allegations by arguing that the Sweatshop Operators were not agents of Hub. Clearly, this argument is based solely on assertions of fact, that are not appropriately addressed by a Rule 12(b)(6) motion. Therefore, the Court finds that Plaintiffs have adequately alleged claims for false imprisonment and invasion of privacy against Hub under an agency theory of vicarious liability. Accordingly, Hub's Motion to Dismiss must be DENIED with respect to the Ninth and Tenth Claims.

### b. Other Theories of Joint Liability

Because the Court finds that Plaintiffs have adequately alleged claims for false imprisonment and invasion of privacy based on an agency theory of vicarious liability, the Court finds it unnecessary to determine whether Plaintiffs have adequately stated their claims under either an "aider and abettor" theory, or a novel theory of "joint employer" liability for intentional torts.

### 3. Nineteenth Claim for Relief (Negligent Sale of Tainted Goods for Profit)

■ Initially, Hub correctly asserts that California courts have never recognized a claim for "Negligent Sale of Tainted Goods for Profit."[4] As currently pled, the claim is akin to an allegation that the Manufacturer defendants sold "hot goods" as defined under the Fair Labor Standards Act ("FSLA"). Under Section 15 of the FLSA, it is "unlawful for any person to transport, ship, deliver or sell in commerce . . . any goods in the production of which an employee was em-

ployed in violation of Section 206 [minimum wages] or Section 207 [maximum hours] . . ." 29 U.S.C. § 215(a). Such goods are known as "hot goods." *In re USM Technology Corp.*, 158 B.R. 821, 824 (Bankr.N.D.Cal. 1993).

Section 15(a) is enforced through Section 17 of the FLSA. Section 17 provides that "[t]he district courts . . . shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title." 29 U.S.C. § 217. However, only the Administrator for the Wage and Hour Division of the Department of Labor has standing to bring an action under Section 17. *See* 29 U.S.C. § 211(a);[5] *USM Technology Corp.*, 158 B.R. at 824. Accordingly, there is no private right of action under the "hot goods" provision of the FLSA.

■ Plaintiffs, however, do not contend that their Nineteenth Claim is an attempted private action under Sections 15 and 17 of the FLSA. Rather, they contend that their Nineteenth Claim is in actuality a negligence per se claim based on the "hot goods" provision of the FLSA. In order to state a negligence per se claim under California law, Plaintiffs must allege four essential elements: (1) Defendants violated a statute, ordinance or regulation of a public entity; (2) the violation was the proximate cause of Plaintiffs' injury; (3) the injury resulted from an occurrence, the nature of which the statute, ordinance or regulation was designed to prevent; and (4) the person suffering the injury was one of the class of persons for whose protection the statute, ordinance or regulation was adopted. *See* Cal. Evid.Code § 669. Plaintiffs have simply failed to allege these elements in connection with their Nineteenth Claim.[6] Given the insufficiency of the allega-

---

**4.** Plaintiffs seem to concede this point in their Opposition because they fail to present any authority for their claim as pled in the TAC. Instead, Plaintiffs argue that their Nineteenth Claim is actually a negligence per se claim based on Section 15 of the FLSA.

**5.** In relevant part, this section provides: "Except as provided in section 212 of this title [dealing with child labor] the Administrator shall bring *all actions* under section 217 of this title to

restrain violations of this chapter." 29 U.S.C. § 211(a) (emphasis added).

**6.** In contrast, Plaintiffs' Fifteenth Claim is specifically denominated as Negligence Per Se and specifically includes sufficient allegations as to all of the necessary elements. Given the specificity of the Fifteenth Claim, the Court can only assume that Plaintiffs intended to state a claim for something other than Negligence Per Se when they pled their Nineteenth Claim.

tions, Plaintiffs' Nineteenth Claim must be dismissed.

■ The only issue remaining with respect to the Nineteenth Claim is whether the dismissal should be with or without prejudice to an amended claim for negligence per se. Hub seems to argue that such an amendment would be futile for three distinct reasons: (1) the court may not recognize a claim for negligence per se based on a statute for which there is no private right of action; (2) Plaintiffs' injuries are not the sort of injuries which the "hot goods" provision of the FLSA was designed to prevent; and (3) the "hot goods" provision of the FLSA was not intended to protect individual employees and, therefore, cannot be the basis of a negligence per se claim brought by employees.

The Court disagrees with Hub's broad and general contention that the Court may not recognize a negligence per se claim simply because the statute upon which the claim is based confers no private right of action. This contention contradicts the reasoning of the Court's March 21, 1996 Order with regard to Plaintiffs' current negligence per se claim (Thirteenth Claim of Plaintiffs' First Amended Complaint/Fifteenth Claim of Plaintiff's TAC).[7] *See Bureerong v. Uvawas,* 922 F.Supp. at 1478. Further, Hub's only authority for this contention, *Sierra–Bay Federal Land Bank Association v. Superior Court,* 227 Cal.App.3d 318, 277 Cal.Rptr. 753 (1991), is distinguishable from the present case.[8]

Hub's second and third arguments raise a more difficult issue—whether the "hot goods" provision of the FLSA was adopted for the purpose of protecting individual employees from the type of injuries allegedly suffered by Plaintiffs. Hub urges that the issue should be answered in the negative. Specifically, Hub asserts that the "hot goods" provision of the FLSA was designed to protect interstate commerce from competitive injury occasioned by the sale of goods manufactured under substandard labor conditions. [Reply at pp. 9, 11]. This assertion is supported by statutory and case authority. *See generally* 29 U.S.C. § 202(a); *see Citicorp Industrial Credit, Inc. v. Brock,* 483 U.S. 27, 36–37, 107 S.Ct. 2694, 2700–01, 97 L.Ed.2d 23 (1987) (the "hot goods" provision of the FLSA "reflects Congress' desire to eliminate the competitive advantage enjoyed by goods produced under substandard conditions"). This purpose serves to protect employers who suffer adverse competitive effects as a result of their compliance with wage-and-hour-laws. *See Wirtz v. Powell Knitting Mills Co.,* 360 F.2d 730 (2d Cir.1966), *overruled on other grounds,* 483 U.S. 27, 107 S.Ct. 2694, 97 L.Ed.2d 23 (1987) (one purpose of the statute making it illegal to sell in interstate commerce products produced in violation of FLSA is to prevent adverse competitive effect on those who comply with the FLSA).

However, elimination of an unjust competitive advantage is not the exclusive objective of the FLSA. As Plaintiffs point out, the Supreme Court has recognized "improving working conditions was undoubtedly one of Congress' concerns" when it adopted the FLSA. *Citicorp Industrial Credit,* 483 U.S. at 36, 107 S.Ct. at 2700.; *see also Brooklyn*

---

**7.** If the Court were to accept Hub's contention and apply it to Plaintiffs' Fifteenth Claim, that claim would also be barred. Notably, Hub expressly declines to challenge the Fifteenth Claim. [*See* Reply at p. 8–9].

**8.** In *Sierra Bay,* the court expressly recognized that a federal statute or regulation may be adopted as a standard of care in state negligence per se actions. *See* 227 Cal.App.3d at 332, 277 Cal.Rptr. 753. In such cases, as here, plaintiffs pursue recognized state causes of action for personal injury based upon negligence and rely upon federal safety standards to establish negligence per se. *See Id.* In contrast, the *Sierra–Bay* plaintiff sought redress of an economic injury by asserting that defendants negligently denied his request to restructure his defaulted farm loan.

*See Id.* at 326–29, 277 Cal.Rptr. 753. The court distinguished plaintiff's claim from those which validly relied on a standard of care prescribed by federal statute to protect individuals from personal injury. *See Id.* at 334, 277 Cal.Rptr. 753. The court's decision turned on the fact that the statute relied upon by Plaintiff was merely economic legislation designed to guide the credit decisions of members of the Farm Credit System. *See Id.* Also, the Court noted that "[i]t is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." *Id.* The predicate acts alleged in this claim, selling "hot goods" in violation of the FLSA, are not as innocuous as legally foreclosing on a defaulted loan.

*Savings Bank v. O'Neil,* 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 902 n. 18, 89 L.Ed. 1296 (1945) (the prime purpose of the FLSA was to aid the unprotected, unorganized and lowest paid of the nation's working population). Congress' concern with the working conditions of individual laborers is apparent from even a cursory examination of the FLSA's statement of purpose. *See* 29 U.S.C. § 202.[9] Furthermore, courts have expressly recognized that the FLSA has a dual purpose to protect compliant employers and their employees as well as underpaid employees. *See Lerwill v. Inflight Services, Inc.,* 379 F.Supp. 690, 696 (N.D.Cal.1974), *aff'd* 582 F.2d 507 (9th Cir.1978); *International Ladies' Garment Workers' Union v. Donovan,* 722 F.2d 795, 810 n. 23 (D.C.Cir.1983).

Given that the FLSA was clearly intended to protect individual laborers, the Court cannot preclude this claim, if properly pled, based on Hub's second and third arguments. In short, the Court cannot find that the adoption of the "hot goods" provision of the FLSA did not have as one of its purposes the protection of Plaintiffs from certain personal injuries incurred as a result of substandard work conditions and involuntary servitude. Therefore, the court does not find that an amendment of the TAC would be futile. Plaintiffs are accorded leave to amend to state a claim for negligence per se based on the "hot goods" provision of the FLSA. Accordingly, the Nineteenth Claim is dismissed without prejudice.

### IV. Conclusion

For all of these reasons, the Court hereby ORDERS that Hub's motion to dismiss Plaintiffs' Fourth, Fifth, Ninth, Tenth and Nineteenth Claims is GRANTED in part and DENIED in part. Specifically, Hub's Motion is GRANTED with respect to the Fourth and Fifth Claims, which are dismissed with prejudice. Further, the Motion to Dismiss is DENIED with respect to the Ninth and Tenth Claims. Finally, Hub's Motion is GRANTED in part with respect to the Nineteenth Claim, which is dismissed without prejudice.

**SO ORDERED.**

---

9. 29 U.S.C. § 202 reads as follows:

(a) The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce. That Congress further finds that the employment of persons in domestic service in household affects commerce.

(b) It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable eliminate the conditions referred to in such industries without substantially curtailing employment or earning power.