Robert S. REICH, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

TRI–STATE ENERGY PRODUCTS, INC., a Corporation; Bank One, West Virginia, Huntington NA, a Corporation; Harold L. Denning; and Clyda S. Denning, Defendants.

Civ. A. No. 3:93–1010.

United States District Court, S.D. West Virginia, Huntington Division.

Nov. 1, 1993.

Stephen M. Horn, Asst. U.S. Atty., Charleston, WV, Thomas S. Williamson, Jr., Marshall H. Harris, James B. Leonard, Arlington, VA, for plaintiff.

Daniel J. Konrad, Huntington, WV, Thomas H. Vanderford, IV, Charleston, WV, for defendants.

## MEMORANDUM OPINION

STAKER, District Judge.

On October 21, 1993, plaintiff filed his complaint herein, pursuant to the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, hereinafter the Act, to enjoin the defendants, by way of a temporary restraining order and a temporary injunction

> from transporting, offering for transportation, shipping, delivering or selling in commerce or shipping, delivering or selling with knowledge that shipment of (sic) delivery or sale thereof in commerce is intended, any goods produced in violation of Section 6 or 7 of the Act (29 U.S.C. § 206 and § 207)....

and by way of a permanent injunction enjoining the defendants from doing so in respect to any goods produced in violation of those sections of the Act as well as Section 15(a)(1) thereof (29 U.S.C. § 215(a)(1)).[1]

An evidentiary hearing was had on plaintiff's complaint on October 21, 1993 (the "hearing"). Before any evidence was heard

---

1. 29 U.S.C. § 206 requires every employer who is covered by the Act and who in any workweek is engaged in commerce or in the production of goods for commerce to pay its employees a wage of the rate of not less than $4.25 per hour.

29 U.S.C. § 207 requires every such employer to pay its employees at least a rate of not less than one and one-half times the regular rate at which they are employed for all hours worked by them in excess of forty hours during any given workweek.

29 U.S.C. § 215(a)(1) provides that it is unlawful for any person to transport, offer for transportation, ship, deliver or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of 29 U.S.C. § 206 or 29 U.S.C. § 207.

thereat, the plaintiff moved to amend his complaint by naming therein the defendant Bank by its correct name, i.e., Bank One, West Virginia, Huntington NA, a corporation, in lieu of the incorrect name, Banc One West Virginia Corporation, a corporation, in which name it was joined as a party defendant in the complaint.

The plaintiff also then moved to add and join as defendants in the complaint Tri–State's landlords, Harold R. Denning and Clyda A. Denning (the Dennings).

Neither the Bank nor the Dennings, all of whom appeared at the hearing by counsel (Harold R. Denning also having appeared in person) having any objections to those two motions, they were both sustained and the complaint was amended accordingly.

At the hearing the following facts were not disputed:

1. Tri–State operated a plant in Huntington, West Virginia, in this district, at which it employed about 25 persons and in which it produced and manufactured and from which it sold and shipped in commerce goods consisting of commercial air handling and heat exchange systems.

2. On September 3, 1993, Tri–State closed its plant and ceased all operations there and left at the plant items of personal property owned by it. That property remained there at the time of the hearing.

3. When its plant was closed, Tri–State owed to its employees wages earned by them during the period from August 23 through September 23, 1993. Those wages still remained unpaid at the time of the hearing.[2]

Tri–State thus violated 29 U.S.C. § 206 by failing to pay its employees any wages earned by them during that period, much less the minimum wage rate required to be paid to them by it by the provisions thereof.

Some of those employees worked in excess of 40 hours during the workweek beginning Monday, August 23 and ending on Saturday, August 28, 1993, and Tri–State thus violated

29 U.S.C. § 207 by failing to pay to those employees one and one-half times their regular wage rate for the hours of work they performed during that workweek in excess of 40 hours.

It is chiefly the undisputed facts stated in the two paragraphs next above and in paragraphs 4. and 5. below upon which plaintiff bases his prayer for injunctive relief against the defendants.

4. At the time Tri–State closed its plant on September 3, 1993, the Bank held, and still holds, a security interest in the property of Tri–State located at the plant, created by a security instrument executed by Tri–State to the Bank to secure the payment of an indebtedness owing from Tri–State to the Bank. The Bank intended to cause that property to be sold under the terms of that security instrument in an effort thereby to effect recovery by the Bank of that indebtedness.

5. The Dennings are the owners of Tri–State's plant premises and were Tri–State's landlord. They have asserted a landlord's lien for rent due to them from Tri–State, pursuant to the laws of the State of West Virginia, and intended to cause Tri–State's property located on those premises to be sold in order to recover that rent.

The property Tri–State left at its plant at the time it closed its plant consisted of the following three categories of personalty:

(a) goods consisting of inventory and supplies which Tri–State had procured from different suppliers and which were used by it to produce the goods it manufactured, i.e., the commercial air handling and heat exchange systems it produced and manufactured there,

(b) the finished or partially finished air handling and heat exchange systems it produced and manufactured at the plant, and

(c) the plant machinery and equipment that it used in the production and manufac-

---

**2.** At the October 21, 1993 hearing, it was represented to the court without dispute that all of Tri–State's officers resigned their official positions when Tri–State ceased operations and closed its plant on September 3, 1993, for which

reason the plaintiff was unable to give Tri–State notice of that hearing and of the plaintiff's intentions to apply for injunctive relief thereat. Tri–State did not appear at that hearing.

ture by it of those air handling and heat exchange systems.

It is the contention of the plaintiff that all of those three categories of the property of Tri–State now located at its plant constitutes "hot goods," i.e., goods in the production of which Tri–State's employees were employed in violation of 29 U.S.C. §§ 206 and 207, and that for either the Bank or the Dennings to cause any of that property to be sold and thus placed in commerce would constitute a violation of 29 U.S.C. § 215(a)(1).

At the hearing the Bank and the Dennings agreed and conceded that the property identified in those categories (a) and (b) are "hot goods" and that for either of them to cause any of the property in those two categories to be sold and placed in commerce would constitute a violation by the one of them who did so of 29 U.S.C. § 215(a)(1).

However, the Bank and the Dennings deny that the plant machinery and equipment identified in that category (c) constitutes "hot goods," it being their contention that Tri–State was the "ultimate consumer" of that plant machinery and equipment under the definition of the term "goods" set forth in 29 U.S.C. § 203(i),[3] for which reason none of them who should cause to be sold and placed in commerce any of that plant machinery and equipment would violate 29 U.S.C. § 215(a)(1) by doing so.

Thus, the only issue the court must decide here is whether the plant machinery and equipment of Tri–State identified in that category (c) is, or is not, so called "hot goods." [4]

This court has jurisdiction of this action pursuant to 29 U.S.C. § 217.[5]

The plant machinery and equipment located at the plant and in issue here included a hydraulic metal shear, on which Tri–State's employees changed the oil from time to time as necessary; a notcher, used to cut corners out of sheet metal, to which those employees affixed two handles and gauges; a press brake, used to bend sheet metal, on which employees changed the oil; a heat exchanger machine, through which coiled metal was rolled, to which employees regularly made adjustments; a plasma cutter, used to cut sheet metal, on which the employees replaced air lines, fuses and switches as needed; some 15 grinders on which worn brushes had to be replaced as needed; about 10 drills on which employees replaced worn switches as needed; and 10 welders on which employees replaced the welding tips often, all of which items constituted the usual maintenance and repair required by their continual use at the plant in Tri–State's production and manufacture process carried on there.

In his brief filed subsequent to the hearing, plaintiff argues first that the critical words in 29 U.S.C. § 215(a), in the context of this case, are plainly "goods" and "production;" and that the term "goods" as defined in 29 U.S.C. § 203(i) mean

goods (including ships and marine equipment), wares products, commodities, merchandise, or articles of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

And plaintiff further argues that under this definition the machinery and equipment used

---

**3.** 29 U.S.C. § 203(i) provides as follows:

"Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

**4.** The plaintiff and the Bank and the Dennings agreed to the court's entering a Consent Order on October 21, 1993, under the terms of which the Bank and the Dennings were ordered by the court not to sell or remove from Tri–State's plant premises, at 4400 Terrace Avenue, Huntington, West Virginia, "the following personal property owned by Tri–State or in which Tri–State may have an interest: Inventory, supplies, finished or partially finished goods manufactured by Tri–State, machinery and equipment." That Consent Order provided "This Consent Order shall expire at midnight October 31, 1993."

**5.** 29 U.S.C. § 217 provides

The district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 215 [29 U.S.C. § 215] of this title....

by Tri–State to manufacture commercial air handling and heat exchange systems are "goods" as that term is used in the Act, since those items of machinery and equipment are plainly "articles or subjects of commerce of any character" and the "ultimate consumer" exception in 29 U.S.C. § 203(i) by its very terms expressly excludes "a producer, manufacturer, or processor of goods."

The second point of plaintiff's argument is that "produced" is defined in 29 U.S.C. § 203(j) to mean

> produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on goods, or in any closely related process or occupation directly essential to the production thereof, in any State.

And plaintiff argues that the maintenance, repair, and servicing, etc., above described, effected by Tri–State's employees on and to Tri–State's plant machinery and equipment operated to cause that machinery and equipment to constitute "goods," wherefore that machinery and equipment is "hot goods."

The plaintiff cited at the hearing, but does not cite in his brief, *Ford v. Ely Group, Inc.*, 621 F.Supp. 22 (W.D.Tenn.1985), *aff'd*, 788 F.2d 1200 (6th Cir.1986), *aff'd*, *Citicorp Industrial Credit, Inc. v. Brock*, 483 U.S. 27, 107 S.Ct. 2694, 97 L.Ed.2d 23 (1987), in which the court entered a temporary restraining order, which it misstyled an Order Granting a Preliminary Injunction, by which it enjoined the defendants, including a creditor holding a security interest therein, from disposing of or attempting to dispose of, etc., property of the employer involved, located in the employer's plant, including "fixtures, machinery or other goods (as defined by Section 3(i)) [29 U.S.C. § 203(i) ] of the FLSA ... pending a hearing on plaintiff's application for a preliminary injunction." However, the court later issued a temporary injunction in substantially the same language as that contained in the temporary restraining order, except that the language in the temporary

injunction made no reference whatever to fixtures or machinery. In this court's view, that circumstance causes any precedential value of *Ford* on the issue here to be at best dubious.

Plaintiff cites other cases in his brief dealing with the broad purposes of the Act, *e.g.*, *Citicorp Industrial Credit, Inc. v. Brock*, 483 U.S. 27, 37, 107 S.Ct. 2694, 2700, 97 L.Ed.2d 23 (1987), and what employees are covered thereby, e.g., *Brennan v. Dillion*, 483 F.2d 1334 (10th Cir.1973), but cites no case in point on the issue.

In the limited time available to the court to conduct research on the issue, the court was unable to discover any case law to support plaintiff's first argument.

The key word bearing on the issue here is the word "goods" and the meaning the Act, 29 U.S.C. § 203(i), attaches thereto. In this court's view that meaning is clear. For facile reference thereto, the court again quotes that provision wherein "goods" is defined to mean

> goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, *but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.* (Emphasis supplied).

It is clear that the "ultimate consumer" clause above emphasized contained in that provision refers to goods procured by an employer producer, manufacturer, or processor, such as Tri–State, which are used by that employer to produce the goods manufactured or processed by that employer. Otherwise the word "thereof" thrice used in that provision has little if any meaning.

Tri–State procured from the suppliers thereof goods, such as sheet metal, etc., which were used by Tri–State in, and for the purpose of, producing and manufacturing the goods Tri–State produced and manufactured at its plant, namely, commercial air handling and heat exchange systems. Tri–State was not the ultimate consumer of those goods it procured from others, pursuant to the lan-

guage of that "ultimate consumer clause," since those goods constituted a part or ingredient of the goods that Tri–State itself produced. For example, for that reason, Tri–State was not an ultimate consumer of those goods it procured from others for use in its production and manufacture of the commercial air handling and heat exchange systems, those being the "goods" it produced, in the sense that a person who purchases a refrigerator for domestic use is the ultimate consumer of that refrigerator. On the other hand, Tri–State was the ultimate consumer of the machinery and equipment that it used in its plant to produce the goods it produced there by using those goods it procured from others, in the same sense that the purchaser of a refrigerator for domestic use is the ultimate consumer thereof. It is, in short, that concept and interpretation which is contemplated by the language contained in 29 U.S.C. § 203(i), reading "but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

Thus, plaintiff's argument that "[t]he 'ultimate consumer' exception [contained in 29 U.S.C. 203(i) ] by its very terms expressly excludes 'a producer, manufacturer, or processor' of goods," is without merit, and has no application whatever to the machinery and equipment used by an employer producer, manufacturer, or processor, such as Tri–State here, to produce goods produced by that employer.

Nor is there any merit to plaintiff's second argument. Again the key word in 29 U.S.C. § 203(j) is "goods." Its language defines, generally but well-nigh all encompassingly, those employees who are to be deemed to be engaged in the production of goods, and the goods therein referred to are those defined in 29 U.S.C. § 203(i). Under the definition in 203(j), employees whose work function, in whole or in part, is maintaining, repairing and servicing the plant machinery and equipment used by their employer to produce the goods that employer produces would certainly be deemed to be engaged in the production of those goods, because that work function constitutes, in the words of that definition, a "closely related process or occupation [that is] directly essential to the production" of the goods produced by that employer, but none of its language, nor that of any other provision of the Act, operates to cause such machinery and equipment to be metamorphosed into "goods" in virtue of such employees' performing that work function thereon.

Thus, that Tri–State's employees performed routine maintenance, repairs, etc., on its plant equipment and machinery did not operate to cause the same to be "goods" produced by Tri–State.

For the foregoing reasons, the court holds that the machinery and equipment contained in the above category (c) at Tri–State's plant is not "hot goods" in the context of this case, as plaintiff argues.

At the close of the October 21, 1993 hearing, it was stipulated and agreed that if the court held that the machinery and equipment at Tri–State's plant were not "hot goods," the court would enter an order granting injunctive relief against the defendants comprehending only Tri–State's property at the plant included in only categories (a) and (b) hereinabove, and if the court held that that machinery and equipment was "hot goods," then the court would enter an order granting injunctive relief against the defendants comprehending Tri–State's property at the plant included in all of categories (a), (b) and (c) above.

Given the court's above ruling, an order will be entered granting injunctive relief against the defendants comprehending only Tri–State's property at the plant included in categories (a) and (b) above, which order the plaintiff's, the Bank's and the Dennings' counsel have agreed, in a telephone conference among them and the court in the early forenoon on November 1, 1993, to prepare and submit to the court for entry, pending the entry of which all of those parties shall leave all property whatever in Tri–State's plant in the same status quo, and as inviolate, as it remained at midnight on October 31, 1993, that being the time of the expiration of the Consent Order entered herein on October 21, 1993.