*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0027P (6th Cir.)
File Name: 03a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SECRETARY OF LABOR,
UNITED STATES DEPARTMENT
OF LABOR,
      *Plaintiff-Appellee,*

    *v.*

3RE.COM, INC.,
      *Defendant,*

GENERAL ELECTRIC CAPITAL
CORPORATION,
      *Defendant-Appellant.*

Nos. 01-5912/6497

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 01-02350—Jon Phipps McCalla, Bernice B. Donald,
District Judges.

Argued: December 10, 2002

Decided and Filed: January 23, 2003

1

Before: MARTIN, Chief Circuit Judge; DAUGHTREY, Circuit Judge; O'MALLEY, District Judge.*

––––––––––––––––––

**COUNSEL**

––––––––––––––––––

**ARGUED:** Louis P. Britt, III, FORD & HARRISON, Memphis, Tennessee, for Appellant. William J. Stone, U. S. DEPARTMENT OF LABOR, Washington, D.C., for Appellee. **ON BRIEF:** Louis P. Britt, III, David P. Knox, FORD & HARRISON, Memphis, Tennessee, for Appellant. William J. Stone, U. S. DEPARTMENT OF LABOR, Washington, D.C., for Appellee.

––––––––––––––––––

**OPINION**

––––––––––––––––––

BOYCE F. MARTIN, JR., Chief Circuit Judge. General Electric Capital Corporation appeals the decision of the district court enjoining the shipment of certain goods and ordering payment to the court for violations of the Fair Labor Standards Act, 29 U.S.C. §§201-219. General Electric is the secured creditor of 3Re.com, a computer repairer and telemarketer that went out of business. When 3Re.com went out of business, it failed to make its payroll for a period of time. The Department of Labor instigated an investigation and then successfully sought an injunction against 3Re.com and General Electric. General Electric first alleges that the court erred in treating accounts receivable as "goods" under the Act. The effect of this treatment by the Secretary is to bring a greater number of employees under the scope of the Fair Labor Standards Act. General Electric further alleges that the district court erred in failing to distinguish among

owed to those workers. These issues may be resolved with a new hearing, as may the question of the applicability of these provisions of the Fair Labor Standards Act to the withheld amounts from employees for 401(k) and health insurance benefits plans.

For the foregoing reasons, we REVERSE the permanent injunction at this time and REMAND to the district court for proceedings consistent with this opinion. While reversing the district court, the status quo, via the preliminary injunction, shall remain in effect until the district court has opportunity to rule fully on these issues.

––––––––––

*The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

779 (6th Cir.) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)), *cert. denied*, 122 S.Ct. 202 (2001).

In this case, notes the Secretary, the defendant did nothing to establish the exempt status of the 3Re.com employees. Because it is "the employer [who] bears the burden of showing that the . . . exemption applies to the employees," *Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc.*, 204 F.3d 673, 676 (6th Cir. 2000), the absence of such proof would cloak even the salaried employees with the broad protection afforded by the Fair Labor Standards Act. General Electric, however, was not afforded an opportunity to make these arguments and to carry its burden. As a result, the failure to prove exemption does not fall upon General Electric alone. General Electric must have the opportunity make its case against the inclusion of these employees.

The second issue is whether or not the Secretary proved which employees actually dealt with tainted goods. Those goods produced after the bankruptcy filing are unquestionably covered by the Fair Labor Standards Act. The employees who were employed by 3Re.com were not necessarily all involved in their production and therefore, are not necessarily all covered by the legislation. General Electric asserts that the Secretary adduced insufficient evidence to tie individual employees who were not paid in accordance with Fair Labor Standards Act requirements to certain "goods" produced by 3Re.com.

General Electric also insists that the district court erred in determining the amount of money the defendant must deposit into the court registry to cure the taint of the Fair Labor Standards Act violation. Although conceding that some equipment was "produced" between April 8, 2001, and April 14, 2001, by 3Re.com hourly employees who were not compensated for their labor, General Electric contends that only that equipment that the Secretary can definitively identify as being produced by specific, unpaid workers can be withheld from commerce pending payment of the back wages

employees at 3Re.com and in improperly extending the time period in which the violations were deemed to have occurred, specifically because the district court did not allow briefing before converting the preliminary injunction into a permanent one. For the following reasons, we REVERSE and REMAND to the district court.

While in business, 3Re.com engaged in repair and remarketing of computer equipment. General Electric provided periodic loans to 3Re.com to be used as working capital. Pursuant to the Loan and Security Agreement between the companies, clients paid 3Re.com for work done, and then General Electric swept the money from 3Re.com's accounts in order to provide future loans.

Beginning on April 11, 2001, the Secretary of Labor's office began an investigation into possible violations of the Fair Labor Standards Act at 3Re.com. The investigation covered the period from March 1, 2001, through May 3, 2001, and revealed several compensation violations. These violations included 3Re.com's failure to pay employees for work done, failure to pay employees for overtime work, and deducting sums from employee paychecks for insurance and 401(k) plans that were not forwarded to the insurers and the plan. Specifically, 3Re.com's salaried employees were last paid on March 30, 2001; its hourly employees were last paid on April 13, 2001; and 3Re.com withheld insurance and 401(k) deductions from its hourly and salaried employees in March and April that were never paid to the insurance companies or the 401(k) plan.

Defendant 3Re.com paid its hourly employees every two weeks with one week in arrears and paid its salaried employees every two weeks with nothing in arrears. Therefore, the district court reasoned, the salaried employees are still owed wages for work done during the April 1 through May 3, 2001, pay periods, and the hourly employees are owed one week's wages for the week of April 8-14, 2001. According to the district court, all employees are also still

owed money for deductions not paid to their insurers and into the 401(k) plan.

Officials of 3Re.com realized that it was not going to make the April 13, 2001, payroll on April 11, 2001, and began contacting its customers to set up exit strategies for all of the inventory present in the facility. 3Re.com's employees worked to distribute that inventory in spite of not being paid for all or a portion of their work. 3Re.com's salaried employees gathered information in accounts receivable pending from approximately March 10, 2001, totaling approximately $610,000.00. Several of 3Re.com's employees created aged accounts receivable reports to be provided to General Electric under the terms of the Security Agreement.

Based upon these facts, the Secretary of Labor instituted an injunction action pursuant to 29 U.S.C. § 217, seeking to enjoin the interstate shipping of any goods produced by 3Re.com in violation of the provisions of the Fair Labor Standards Act. Following the entry of a temporary restraining order, the district court held an evidentiary hearing on the Secretary's preliminary injunction request. At the conclusion of that hearing, the court granted the injunction but allowed shipment of the goods should the defendants deposit into the registry of the court money equaling the value of the goods to be transported. At this hearing, General Electric made the argument it made at oral argument, that the injunction should not restrain the shipment of "hot goods" where the Secretary had presented no evidence distinguishing which goods were tainted, specifically those documents known as "accounts receivable." General Electric further requested an opportunity to brief the district court on this issue. The district court ruled that the standard for a preliminary injunction had been met, but it said it would allow briefing before ruling on the permanent injunction.

General Electric submitted a letter in support of its position. Because the court soon made the preliminary injunction permanent, post-hearing briefs were never requested or

daily operations. Those invoices related to goods shipped prior to commencement of bankruptcy proceedings, however, have little or nothing to do with the goals of the Fair Labor Standards Act and the protective powers afforded the secretary. As we said recently in *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 392 (6th Cir. 2001), where documents are "merely records relating to services already rendered by employees," "have little intrinsic value," "will not be sold in interstate commerce," and are used "only to generate accounts receivable," the those records are not per se "hot goods."

Even having found that the tainted accounts receivable in this case are not "hot goods" under the statute, this court must still resolve another issue. General Electric complains that the district court improperly converted the preliminary injunction to a permanent injunction without affording General Electric an opportunity to brief its arguments. Specifically, General Electric alleges it wished to argue that some employees that the Secretary included in her figures and injunction are actually exempt from the Fair Labor Standards Act, that the Secretary had not proven which employees handled the tainted goods, and that the Secretary had improperly included the money withheld for employee benefits in the injunction amount.

As to the first question, whether or not some employees are exempt from the Fair Labor Standards Act, the minimum wage and overtime provisions of the Act (and, consequently, the "hot goods" sanctions) do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). To be considered an employee serving in such a position, the individual need satisfy only three short tests: a duties test, 29 C.F.R. §§ 541.1(a), 541.2(a), and 541.3(a); a salary level test, 29 C.F.R. §§ 541.1(f), 541.2(e), and 541.3(e); and a salary basis test, 29 C.F.R. §§ 541.118, 541.212, 541.312. Such exemptions, however, are to be narrowly construed against the employer. *See Takacs v. Hahn Auto. Corp.*, 246 F.3d 776,

of these cases, the challenged items were either not products for which a court recognized a market (e.g., atomic bombs) or were merely means used to assist in the production of the actual goods introduced into the stream of commerce (e.g., machines to produce goods or internal reports).

In contrast, the Secretary argues that products less tangible than computers or steel beams can nevertheless be considered "goods" under the Fair Labor Standards Act. Specifically, she explains that courts have recognized that telegram messages can be "subjects of commerce," *see W. Union Tel. Co. v. Lenroot*, 323 U.S. 490, 502-03 (1945), and that stocks, bonds, bills of lading and exchange, and other commercial paper are "goods." *See Bozant v. Bank of New York*, 156 F.2d 787, 789-90 (2d Cir. 1946). In those cases, however, the less tangible items were themselves "articles of trade" or the object of the commercial transaction between the cited employer and its customer.

In 29 C.F.R. § 776.20(b) n.21 (2002), the Department of Labor criticized a restrictive reading of those cases and argued that "[a]lthough the Supreme Court has not settled the question, such a [narrow] view appears contrary to the express statutory definitions of 'goods' and 'commerce'." The role of the Secretary of Labor in this type of action, however, is to protect law-abiding market competitors from unfair competition from products produced in violation of the Fair Labor Standards Act. This goal should inform any dispute over "goods" that may or may not be "goods" as contemplated by the Fair Labor Standards Act.

By statute, an employee is engaged in the production of goods if he or she is employed "in any closely related process or occupation directly essential to the production thereof . . . ." 29 U.S.C. § 203(j). Here, the employees preparing 3Re.com's accounts receivable reports were involved in producing the repaired and remarketed computers that comprised the company's business by performing the functions that acquired the funding necessary for 3Re.com's

submitted. The district court then ruled that accounts receivable prepared by employees of 3Re.com constituted "goods" under the Act, produced by workers not paid in accordance with the standards set by the Fair Labor Standards Act. The court determined that the amount of money necessary to cure the taint of the "hot goods" was $222,841.12. Of that amount, $195,888.17 was wages due to hourly and salaried employees, and $26,952.95 covered the amount of money not paid by the company to the employees' benefit plans.

General Electric now challenges the classification of accounts receivable as "hot goods" under the Fair Labor Standards Act, the district court's decision not to hear arguments about the exemption of certain employees from the requirements of the sections at issue, and the inclusion in the offense of figures for withholding for 401(k) and health insurance benefit plans, which extended the violation time period.

When reviewing the decision of a district court to grant or to deny a request for issuance of a permanent injunction, we employ several different standards of review. "Factual findings are reviewed under the clearly erroneous standard, legal conclusions are reviewed de novo, and the scope of injunctive relief is reviewed for an abuse of discretion." *S. Cent. Power Co. v. Int'l Bhd. of Elec. Workers, Local 2359*, 186 F.3d 733, 737 (6th Cir. 1999) (citing *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)). Likewise, in addressing appeals in Fair Labor Standards Act cases specifically, "we will review the district court's underlying findings of fact for clear error but review de novo the district court's application to those facts of the legal standards contained in statutes, regulations, and caselaw." *Brock v. City of Cincinnati*, 236 F.3d 793, 800 (6th Cir. 2001).

Pursuant to the provisions of 29 U.S.C. § 206(a) and 207(a), covered employers must offer compensation equal to or exceeding the national minimum wage and must

compensate employees for overtime labor "at a rate not less than one and one-half times the regular rate." Should an employer fail to comply with these mandates, employees may recover in a court action any unpaid wages or overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Moreover, 29 U.S.C. § 215(a)(1) specifies that it shall be unlawful for that employer, and indeed, for any person "to transport, offer for transportation, ship, deliver, or sell in commerce . . . any goods in the production of which any employee was employed in violation of section 206 or section 207 . . . ." Pursuant to 29 U.S.C. § 217, the Secretary of Labor is authorized to seek a federal court injunction to restrain any actual or threatened transportation of so-called "hot goods." *See Citicorp Indus. Credit, Inc. v. Brock*, 483 U.S. 27, 33 (1987).

In 29 U.S.C. § 203(i), Congress described the "goods" that are the subject of the legislative directive as "goods . . ., wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof . . . ." In 29 U.S.C. § 203(j), Congress defined the term "produced" to mean:

> produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State.

While this language is expansive, it is in keeping with the protective and remedial goals of the Fair Labor Standards Act.

In order to encompass as many workers at 3Re.com as possible within the class of protected employees, the

Secretary alleged that even those employees who prepared accounts receivable reports at 3Re.com were participants in the production of "goods" involved in commerce. General Electric contests that suggestion, arguing that a mere accounting report is only a record of goods but not a "good" itself. Consequently, maintains General Electric, the inclusion of those workers whose only connection with the company was the preparation of the accounting reports in the class of employees producing "goods" for transport in commerce was improper.

In advancing its position on this issue, General Electric submits that 3Re.com was in the business of repairing and marketing computers, not the business of "manufacturing" accounts receivable reports. As a result, General Electric contends that the reports could not have been "produced for commerce." In fact, General Electric cites the court to the bankruptcy court decision in *USM Technology Corp. v. Decker*, 158 B.R. 821, 825 n.5 (Bankr. N.D. Cal. 1993), in which that court noted that because "[a]ccounts receivable are intangible assets not 'produced for commerce,' but result from the production of tangible items or services, they clearly do not fall within the definition of 'goods' set forth in the statute."

Similarly, General Electric cites the court to *Selby v. J.A. Jones Construction Co.*, 175 F.2d 143 (6th Cir. 1949), in which the court ruled that atomic bombs are not goods for commerce within the meaning of the Fair Labor Standards Act; *Reich v. Tri-State Energy Products, Inc.*, 836 F. Supp. 358 (S.D. W.Va. 1993), in which the district court determined that workers maintaining and repairing the machinery used to produce the goods sold by the company in question were not protected by the Fair Labor Standards Act; and *Mitchell v. Welcome Wagon, Inc.*, 139 F. Supp. 674 (W.D. Tenn. 1954), *aff'd*, 232 F.2d 892 (6th Cir. 1956), in which the court concluded that internal daily reports were prepared only to monitor employee activity and, therefore, were not goods within the meaning of the Fair Labor Standards Act. In each